## PAUL R. KITCH, JR., AND PATRICIA D. KITCH, ET AL.,[1] PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 24119–92, 24120–92, 25938–92, 25939–92, 5475–93.

Filed January 5, 1995.

---

[1] Cases of the following petitioners are consolidated herewith: Thomas D. Kitch and Sally L. Kitch, docket No. 24120–92; James C. Kitch and Christine B. Kitch, docket No. 25938–92; Edmund W. Kitch and Alison Kitch, docket No. 25939–92; and David P. Kitch and Mary P. Kitch, docket No. 5475–93.

*Timothy P. O'Sullivan,* for petitioners.
*Ann L. Baker,* for respondent.

OPINION

LARO, *Judge:* This case is before the Court fully stipulated under Rule 122.[2] Paul R., Jr. (Paul, Jr.) and Patricia D. Kitch, Thomas D. (Thomas) and Sally L. Kitch, James C. (James) and Christine B. Kitch, Edmund W. (Edmund) and Alison Kitch, and David P. (David) and Mary P. Kitch petitioned this Court for a redetermination of respondent's determination of deficiencies in their respective 1989 Federal income taxes. We use the term "petitioners" to refer solely to Paul, Jr., Thomas, James, Edmund, and David.

Respondent determined deficiencies in petitioners' Federal income taxes for the 1989 taxable year as follows:

| Petitioner | Docket No. | Deficiency |
| --- | --- | --- |
| Paul, Jr. | 24119–92 | $16,369 |
| Thomas | 24120–92 | 16,613 |
| James | 25938–92 | 13,347 |
| Edmund | 25939–92 | 14,189 |
| David | 5475–93 | 16,369 |

Respondent also determined that James and Edmund were liable for the accuracy-related penalty under section 6662(a) in the amounts of $2,669 and $2,838, respectively.[3]

Following concessions by respondent, we must decide:[4]

1. Whether the $362,326 distributed to petitioners by the Estate of Josephine P. Kitch constituted ordinary income to petitioners in their 1989 taxable year. We hold it does.

2. Whether petitioners may reduce their 1989 gross incomes by a long-term capital loss reported by the Estate of Paul R. Kitch on its 1989 Federal income tax return and reported to the Estate of Josephine P. Kitch on a Schedule K–1, Beneficiary's Share of Income, Deductions, Credits, Etc. We hold they may not.

---

[2] Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the year at issue.

[3] Respondent has conceded this penalty.

[4] After issuing the notice of deficiency to David, respondent asserted an additional deficiency of $87 attributable to a capital gain adjustment of $266. Respondent has failed to meet her burden of proof on this increase in the deficiency, and we do not sustain it. Rule 142(a).

*Background*

Petitioners and respondent submitted this case to the Court on the basis of the pleadings and facts recited in a joint stipulation, with accompanying exhibits. The stipulation and accompanying exhibits are incorporated herein by this reference. When petitioners petitioned the Court, Paul, Jr., and Thomas resided in Wichita, Kansas; James resided in Atherton, California; Edmund resided in Charlottesville, Virginia; and David resided in Fresno, California. Petitioners are the children of Paul R. Kitch (Paul) and Josephine P. Kitch (Josephine).

Paul and Josephine were divorced in December 1973. Under a supplemental decree of divorce (supplemental decree), entered on March 12, 1974, Paul was to make cash alimony payments to Josephine based upon a certain percentage of his annual income. The payments were to continue until the earlier of (1) the death of Paul or Josephine or (2) the remarriage of Josephine. On October 13, 1987, Josephine died without having remarried. Petitioners were the sole and equal beneficiaries of her estate. On October 24, 1987, Paul died. Diana L. Kitch, his then wife, was the primary beneficiary of his estate.

When Paul died, he owed Josephine $480,000 in unpaid alimony. On March 2, 1988, the executor of Josephine's estate petitioned the Probate Department of the District Court (Probate Court) for Sedgwick County, Kansas, to collect the alimony from Paul's estate. On July 1, 1988, Josephine's estate, Paul's estate, and their respective beneficiaries entered into a "Settlement Agreement" satisfying the claim for the unpaid alimony. On July 25, 1988, the Probate Court issued an order approving the settlement agreement "as a settlement of the alimony claim of" Josephine's estate against Paul's estate.

Under the settlement agreement, Josephine's estate received from Paul's estate a cash payment of $20,000 in

1988 and a cash and property payment totaling $362,326 in 1989. The $362,326 payment consisted of the following:

| Item | Fair market value |
| --- | --- |
| Real estate | $173,398 |
| Farm equipment | 6,245 |
| Promissory note (from David P. Kitch) | 78,340 |
| Promissory note (from Josephine P. Kitch Revocable Trust) | 15,640 |
| Vehicle (Pontiac) | 2,900 |
| Partnership interest | 750 |
| Cash | 85,053 |
| Total | 362,326 |

These payments were the only transfers made by Paul's estate to Josephine's estate under the settlement agreement. In 1989, Josephine's estate distributed the $362,326 of cash and property to petitioners.[5]

Paul's estate filed its final Form 1041, U.S. Fiduciary Income Tax Return, for its taxable year ending September 30, 1989. Paul's estate treated Josephine's estate as a beneficiary. As a beneficiary, Josephine's estate reported the $362,326 payment received from Paul's estate as taxable to the extent of the distributable net income (DNI) of Paul's estate for its taxable year ended September 30, 1989, which was $8,767. Paul's estate issued a Schedule K–1 to Josephine's estate showing this amount as DNI. In addition to the DNI of $8,767, the Schedule K–1 also showed that Paul's estate had sustained a capital loss of $1,334.

Josephine's estate filed its final Form 1041 for its taxable year ending September 30, 1989. Josephine's estate included the $8,767 of DNI and the $1,334 of capital loss on its income tax return for its taxable year ended September 30, 1989. Josephine's estate reported $5,531 of DNI for the taxable year after taking into account the $8,767 of DNI and the $1,334

---

[5] The exact date of the distribution from Josephine's estate to petitioners is not contained in the record. Respondent determined that 1989 is the taxable year in which petitioners should include the $362,326 of cash and property in their gross incomes. Petitioners have not challenged respondent's determination of the year of inclusion. Rule 142(a).

capital loss. Josephine's estate issued a Schedule K–1 to each of petitioners reporting his share of the $5,531 of DNI.

Each petitioner included his share of the $5,531 of DNI on his 1989 Federal income tax return. Petitioners did not include in their gross incomes the amount representing the difference between the $362,326 received by Josephine's estate and its $5,531 of DNI. Respondent determined that petitioners must include their respective shares of the full amount of the $362,326 distribution in their 1989 gross incomes and could not deduct the $1,334 capital loss.

## Discussion

We must initially determine the proper tax treatment of the alimony paid by Paul's estate. Resolution of this issue determines the taxability of the amounts received by petitioners from Josephine's estate. Petitioners argue that section 682(b) governs the payment of alimony from Paul's estate to Josephine's estate. Section 682(b) would, petitioners argue, limit the amount of alimony income taxable to Josephine's estate by Paul's estate's DNI; i.e., $8,767. Petitioners alternatively argue that, if section 682(b) does not have that effect, section 71, as amended by the Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98–369, sec. 422(a), 98 Stat. 494, 795, applies to preclude the value of the noncash portion of the property transferred from qualifying as alimony. Respondent argues that section 682(b) merely applies as a timing provision. Respondent then argues that under sections 71 and 691, the alimony received by Josephine's estate is fully includable in its gross income as income in respect of a decedent. Petitioners bear the burden of proving respondent's determinations incorrect. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The submission of this case to the Court under Rule 122 does not change petitioners' burden of proof. *Borchers v. Commissioner,* 95 T.C. 82, 91 (1990), affd. on other issues 943 F.2d 22 (8th Cir. 1991).

DEFRA amended sections 71 and 682. Therefore, before addressing petitioners' arguments, we must determine which versions of sections 71 and 682 apply. DEFRA provides that its amendments to sections 71 and 682 shall apply "to any divorce or separation instrument * * * executed before January 1, 1985, but modified on or after such date if the modi-

fication expressly provides that the amendments made by this section shall apply to such modification." DEFRA sec. 422(e)(2), 98 Stat. 798. Petitioners argue that the July 1, 1988, settlement agreement modified the supplemental decree, and that we should apply sections 71 and 682 as amended by DEFRA. Petitioners contend the settlement agreement modified the supplemental decree because the settlement agreement (1) compromised the total outstanding alimony and (2) permitted noncash payments. Respondent disagrees and argues that Josephine's right to receive alimony arose under the supplemental decree in 1974, which was never modified during her lifetime.

A modification of a divorce instrument generally occurs if: (1) There is a change in the amount of alimony, (2) there is a change in the time period over which the alimony payments are to continue, or (3) there is added to or deleted from the instrument a contingency or condition relating to the payment of alimony. Sec. 1.71–1T(e), Temporary Income Tax Regs., 49 Fed. Reg. 34458 (Aug. 31, 1984). State law determines whether any of these three conditions were satisfied. *Hoffman v. Commissioner,* 54 T.C. 1607, 1610–1611 (1970), affd. 455 F.2d 161 (7th Cir. 1972). We look to the law of the State of Kansas to determine whether the settlement agreement modified the supplemental decree because that is where Paul and Josephine were divorced and their estates probated.

We conclude that no modification of the supplemental decree occurred after December 31, 1984. First, the supplemental decree governed Paul's obligation to pay alimony to Josephine until one of them died, and they never altered its terms while they were alive. The force and effect of the supplemental decree terminated upon Josephine's death. *Bair v. Bair,* 750 P.2d 994, 998 (Kan. 1988); *In re Estate of Sweeney,* 500 P.2d 56, 64 (Kan. 1972). The estates could not have modified the supplemental decree through the settlement agreement because at that time no supplemental decree existed to modify. Second, Kansas law provides that unpaid alimony represents a judgment that may be collected by the judgment creditor like any other judgment. *Dozier v. Dozier,* 850 P.2d 789, 792 (Kan. 1993). A Kansas court is not empowered to change the amount of past due alimony because of the existence of the debtor/creditor relationship.

See *Haynes v. Haynes*, 212 P.2d 312, 316–317 (Kan. 1949). Finally, the settlement agreement evinces an intent to compromise a delinquent debt and not to modify a divorce instrument. The settlement agreement stated that the payment of cash and property by Paul's estate to Josephine's estate was made "in full settlement of [its $480,000] claim for unpaid alimony against the Estate of Paul R. Kitch".[6] Because the supplemental decree was never modified, we apply sections 71 and 682 as they read before DEFRA.[7]

### Receipt of $362,326 by Petitioners From Josephine's Estate

Petitioners argue that section 682(b) applies when an estate pays alimony.[8] Petitioners contend that section 682(b) treats the payee spouse as a beneficiary of the payor spouse's estate for all purposes. According to petitioners, the effect of section 682(b) is that the payee spouse would include in gross income the alimony received only to the extent of the estate's DNI as computed under the conduit rules of part I of subchapter J in the circumstances of this case. Similarly, the estate would take a matching deduction. Petitioners argue this framework preserves the assignment of income scheme sanctioned by sections 71 and 215.[9] Respondent replies that

---

[6] Petitioners direct our attention to an agreement dated May 12, 1994, which references the settlement agreement. Petitioners contend that this agreement complies with the requirement of sec. 1.71–1T(e), Temporary Income Tax Regs., 49 Fed. Reg. 34458 (Aug. 31, 1984), that a modification expressly provide that sec. 71, as amended by Deficit Reduction Act of 1984 (DEFRA), Pub. L. 98–369, sec. 422(a), 98 Stat. 494, 795, apply to payments made after the divorce instrument is modified. We do not discuss this agreement because of our conclusion that the supplemental decree was never modified.

[7] We do not intend for our opinion in this case to in any way express a view on the interpretation and application of sec. 682, as amended by DEFRA. Further, because we apply pre-DEFRA sec. 71 to this case, we do not feel it necessary to address petitioners' alternative argument; i.e., to apply sec. 71, as amended by DEFRA.

[8] Prior to DEFRA, sec. 682(b) provided as follows:

SEC. 682. INCOME OF AN ESTATE OR TRUST IN CASE OF DIVORCE, ETC.

       *      *      *      *      *      *      *

(b) WIFE CONSIDERED A BENEFICIARY.—For purposes of computing the taxable income of the estate or trust and the taxable income of a wife to whom subsection (a) or section 71 applies, such wife shall be considered as the beneficiary specified in this part. A periodic payment under section 71 to any portion of which this part applies shall be included in the gross income of the beneficiary in the taxable year in which under this part such portion is required to be included.

[9] Payments of alimony pursuant to a decree of divorce or separate maintenance pursuant to a separation instrument are deductible by the payor spouse under sec. 215 and includable in the income of the payee spouse under sec. 71. According to petitioners, the purpose for the tax treatment of alimony is to relieve the payor spouse of the burden of paying tax on the income which is transferred to the payee spouse as alimony and to impose that burden on the spouse

section 682(b) treats a wife as a beneficiary for the limited purpose of determining the taxable period in which the amount distributed will be included in the wife's income. See Rev. Rul. 65–283, 1965–2 C.B. 25. Because section 682(b) applies only as a timing provision, respondent determined that section 691 requires Josephine's estate to recognize in its income the amount received from Paul's estate as income in respect of a decedent, which is alimony in character under section 71. Respondent then determined that section 662(a) requires petitioners to include in their gross incomes the alimony income distributed to them by Josephine's estate. We agree with respondent.

Section 682(b) applies as a timing provision and does not invoke the conduit rules of subchapter J. We previously decided this issue in *Welsh Trust v. Commissioner,* 16 T.C. 1398 (1951), affd. per curiam sub nom. *Girard Trust Corn Exch. Bank v. Commissioner*, 194 F.2d 708 (3d Cir. 1952). In the *Welsh Trust* case, the Court determined the applicability of section 171(b) of the Internal Revenue Code of 1939, the predecessor to section 682(b). The Court looked to the legislative history of sections 171(b) and 22(k), the latter being a predecessor to section 71. *Id.* at 1401. The legislative history explicitly states: "the *whole* of such * * * payment shall be included in gross income of the beneficiary in the taxable year in which under * * * section 171(b) such part is required to be included in her income."[10] (Emphasis added.) S. Rept. 1631, 77th Cong., 2d Sess. 85 (1942), 1942–2 C.B. 504, 569; see also sec. 1.71–1(b)(5), Income Tax Regs. Despite the reference to a wife as a beneficiary in section 682(b), the amount includable in her income as alimony is governed by section 71, not by the trust conduit rules of part I of subchapter J. *Twinam v. Commissioner*, 22 T.C. 83, 90 (1954).[11] The regulations contain an example confirming this interpretation of section 682(b). The example portrays a wife, who because she is subject to tax under section 71, was

---

receiving the alimony.

[10] In *Laughlin's Estate v. Commissioner*, 167 F.2d 828 (9th Cir. 1948), revg. 8 T.C. 33 (1947), the court held that a spouse receiving alimony from an estate is a beneficiary within sec. 171(b).

[11] We do not consider any contrary language in *Stewart v. Commissioner*, 9 T.C. 195 (1947), to be a proper interpretation of sec. 171(b) of the Internal Revenue Code of 1939, the predecessor to sec. 682(b), in view of our holdings in the later cases of *Welsh Trust v. Commissioner*, 16 T.C. 1398 (1951), affd. per curiam sub nom. *Girard Trust Corn Exch. Bank v. Commissioner*, 194 F.2d 708 (3d Cir. 1952), and *Twinam v. Commissioner,* 22 T.C. 83 (1954). But cf. *Ellis v. United States,* 416 F.2d 894 (6th Cir. 1969).

required to include in gross income the entire amount of alimony received, even though a portion of it came from trust corpus. Sec. 1.682(b)–1(b), Income Tax Regs. This example further illustrates that section 682(b) does not invoke the conduit provisions of subchapter J as petitioners contend.

We look to section 71,[12] which generally governs the taxability of alimony received by a spouse, and find that it is applicable here. Section 71(a)(1), before DEFRA, required a divorced wife to include in her gross income periodic payments received "in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree" of divorce. Paul's estate made the $362,326 payment to Josephine's estate because the supplemental decree imposed upon Paul the obligation to pay alimony to Josephine. The payment of this arrearage, though made in a lump sum, is includable in the gross income of Josephine's estate as alimony. *Estate of Narischkine v. Commissioner*, 14 T.C. 1128, 1131 (1950), affd. per curiam 189 F.2d 257 (2d Cir. 1951); see also *Holloway v. United States*, 428 F.2d 140, 143 (9th Cir. 1970). The fact that Paul died and his estate made the payment does not affect the payment's character as alimony. See *Welsh Trust v. Commissioner, supra* at 1400; sec. 1.71–1(c)(2), Income Tax Regs. Thus, the $362,326 payment received by Josephine's estate constitutes alimony under section 71.

We now address the issue of the taxability to petitioners of the payments received from Josephine's estate. Josephine's estate distributed ratably the cash and property making up the alimony income to petitioners. Although section 102 generally excludes the value of property acquired by bequest from the recipient's gross income, section 102 is subject to the provisions set forth in subchapter J. Sec. 102(b); see also

---

[12] Prior to DEFRA, the pertinent part of sec. 71 provided as follows:

SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.

(a) GENERAL RULE.—

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

sec. 662. Part I of subchapter J governs the taxation of estates, trusts, and their beneficiaries.

A primary principle underlying our system of income taxation is that an item of gross income becomes taxable when an individual includes it in gross income under his or her method of accounting. Sec. 451. The individual's death should not frustrate this principle in instances when the individual has a legal right to an item of gross income but dies before reporting it as such. *Rollert Residuary Trust v. Commissioner*, 80 T.C. 619, 636–637, 642–643 (1983), affd. 752 F.2d 1128 (6th Cir. 1985). Section 691 promotes this principle by taxing property received after an individual's death if the property would have been includable in gross income had the individual lived.[13] *Id.*

Section 691 provides that a taxpayer's gross income includes income in respect of a decedent (IRD). See also sec. 61(a)(14). IRD consists of amounts: (1) Of gross income, (2) which the decedent was entitled to receive at the time of death, (3) but were not properly includable in the decedent's gross income under the decedent's method of accounting before death, and (4) which were received by the taxpayer as the decedent's successor in interest. Sec. 691(a); sec. 1.691(a)–1(b), Income Tax Regs. The character of an item of IRD to the successor is the same character as the item would have had in the decedent's hands "if the decedent had lived and received such amount." Sec. 691(a)(3). A decedent's estate shall include the IRD in its gross income if it receives the right to receive the IRD from the decedent. Sec. 691(a)(1)(A); sec. 1.691(a)–2(a)(1), Income Tax Regs.

We conclude that the receipt of the $362,326 of alimony by Josephine's estate constitutes IRD under section 691. First, at the time of Josephine's death she had the right to receive alimony income that was not properly reportable on her return under her method of accounting. *Dozier v. Dozier,* 850 P.2d 789, 792 (Kan. 1993) (past-due alimony is a judgment under Kansas law). Second, the $362,326 lump-sum distribution from Paul's estate to Josephine's estate represented

---

[13] Sec. 1014(c) complements sec. 691 by preventing the step-up basis rule of sec. 1014(a) from applying in instances where items of income have not yet been taxed. *Rollert Residuary Trust v. Commissioner,* 80 T.C. 619, 647–648 (1983), affd. 752 F.2d 1128 (6th Cir. 1985). Sec. 1014(c) provides that sec. 1014 "shall not apply to property which constitutes a right to receive an item of income in respect of a decedent under section 691."

alimony income. Sec. 71(a)(1); *Welsh Trust v. Commissioner,* 16 T.C. at 1400. Third, Josephine's estate succeeded to the right to receive the alimony arrearages because of Josephine's death. See *Estate of Narischkine v. Commissioner, supra* at 1130. Thus, Josephine's estate had IRD of $362,326 which, as we previously held, was alimony in character.[14] Sec. 691(a)(1), (3); sec. 1.691(a)–1(b), Income Tax Regs.

Part I of subchapter J generally uses a conduit approach allowing estates to pass on to their beneficiaries the amount and the character of the income received by the estates. The concept of DNI plays a central role in part I of subchapter J in separating distributions of income, which are taxed to the beneficiaries under section 662(a), from distributions of corpus, which are received tax free by the beneficiaries under section 102(a). DNI serves the purpose:

of determining how much of an amount distributed or required to be distributed to a beneficiary will be taxed to him. In effect, the concept of distributable net income gives statutory expression to the principle underlying the taxation of estates and trusts, that is, that these separate taxable entities are only conduits through which income flows to the beneficiaries except where income is accumulated by the estate or trust for future distribution. * * *

S. Rept. 1622, 83d Cong., 2d Sess. 343 (1954). The conduit approach is further implemented because the tax character of items comprising DNI is preserved in the hands of the beneficiaries. Sec. 662(b).

Determination of DNI begins with the taxable income of an estate. Sections 641(b) and 642 determine an estate's taxable income, and section 643 defines DNI by making certain modifications to an estate's taxable income. In arriving at an estate's DNI, no modification is made to an estate's taxable income for distributions to beneficiaries because a deduction in determining taxable income has already been taken under section 661. Sec. 643(a)(1).

---

[14] Respondent directs us to *Estate of Narischkine v. Commissioner,* 14 T.C. 1128 (1950), affd. per curiam 189 F.2d 257 (2d Cir. 1951), and argues that it is factually indistinguishable from the facts of this case. We agree. In the *Estate of Narischkine* case, the Court held that alimony arrearages paid by the husband in a lump sum to the deceased wife's estate constituted IRD. *Id.* at 1131. Petitioners attempt to distinguish the *Estate of Narischkine* case by arguing that the alimony arrearages were paid by a living spouse rather than an estate. This distinction is meaningless. See *Twinam v. Commissioner,* 22 T.C. 83 (1954). We find the holding of *Estate of Narischkine* to be directly on point and apply its reasoning to this case.

Josephine's will names petitioners as her beneficiaries, and thus, subchapter J, part I, governs here. Sec. 643(c). Section 662(a) provides that a beneficiary of an estate properly includes in his gross income the amount specified in section 661(a) that the estate paid or distributed to the beneficiary. Section 662(b) provides that amounts determined under section 662(a) to be includable in a beneficiary's gross income "shall have the same character in the hands of the beneficiary as in the hands of the estate". In 1989, Josephine's estate had alimony income of $362,326. Inclusion of the alimony income increases Josephine's estate's DNI. Josephine's estate distributed to petitioners cash and property totaling $362,326. The estate is entitled to deduct the amount of the income it distributed, but this deduction cannot exceed the estate's DNI. Sec. 661(a). Petitioners must include in their gross incomes their respective shares of the amount of the estate's deduction under section 661(a). Sec. 662(a); *Ransom v. Commissioner,* 2 T.C. 647, 656 (1943). Further, petitioners must report the income on their returns as alimony; i.e., as ordinary income. Sec. 662(b).

### Capital Loss Sustained by Paul's Estate

Paul's estate treated Josephine's estate as a beneficiary. As a beneficiary, Paul's estate issued a Schedule K–1 to Josephine's estate reporting a $1,334 long-term capital loss. Respondent disallowed this loss to Josephine's estate, consequently increasing its DNI and the amount of income includable in petitioners' gross incomes under section 662(a). Petitioners agree that resolution of this issue turns on our holding regarding section 682(b). We concluded that section 682(b) made Josephine's estate a beneficiary of Paul's estate solely for the purpose of determining the accounting period in which the alimony income was reportable by Josephine's estate.

Section 642(h) allows a beneficiary succeeding to the property of an estate to deduct an estate's capital loss carryover when it has a capital loss carryover under section 1212 that would be allowable to the estate in a taxable year subsequent to the taxable year of its termination but for the termi-

nation.[15] Sec. 1.642(h)–1, Income Tax Regs. Here, the tax attributes of Paul's estate do not flow through to Josephine's estate because it was not a beneficiary of Paul's estate. Josephine's estate, therefore, cannot properly deduct on its Form 1041 the $1,334 capital loss from Paul's estate, and, consequently, petitioners also do not have a capital loss flowing to them from Josephine's estate.

We have considered all other arguments made by petitioners and to the extent we have not addressed them, find them to be without merit.

To reflect the foregoing and concessions,

*Decisions will be entered under Rule 155.*[16]

---

[15] SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS.

(h) UNUSED LOSS CARRYOVERS AND EXCESS DEDUCTIONS ON TERMINATION AVAILABLE TO BENEFICIARIES.—If on the termination of an estate or trust, the estate or trust has—

    (1) a net operating loss carryover under section 172 or a capital loss carryover under section 1212, or

    (2) for the last taxable year of the estate or trust deductions (other than the deductions allowed under subsections (b) or (c)) in excess of gross income for such year,

then such carryover or such excess shall be allowed as a deduction, in accordance with regulations prescribed by the Secretary to the beneficiaries succeeding to the property of the estate or trust.

[16] The record does not contain Josephine's estate's Form 706, U.S. Estate (and Greration-Skipping Transfer) Tax Return. The IRD receivable, in this case the alimony arrearages, is includable on Josephine's estate's Form 706. Sec. 2031. Respondent has conceded that, to the extent Josephine's estate is liable for estate tax on the alimony income received, petitioners are entitled to a pro rata itemized deduction under sec. 691(c)(1)(A) for the estate taxes paid by Josephine's estate.