T.C. Memo. 1996-406


UNITED STATES TAX COURT


THWAITES TERRACE HOUSE OWNERS CORP., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15777-94.                    Filed September 3, 1996.


Terrence J. Dwyer, for petitioner.[1]

Andrew J. Mandell, for respondent.

_____

[1] Amici curiae briefs were filed by Mark A. Levy and Mayer Greenberg for Stewart Tenants Corp., and Joel E. Miller for the National Association of Housing Cooperatives, the Council of New York Cooperatives, and the Federation of New York Housing Cooperatives.

MEMORANDUM OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax of $8,117 for 1989 and $6,606 for 1990.

The issues for decision are:

1.   Whether petitioner, a housing cooperative under section 216, is subject to subchapter T (sections 1381-1388), aspetitioner contends, or is a membership organization under section 277, as respondent contends.  We hold that petitioner is subject to subchapter T and is not subject to section 277.

2.   Whether interest income earned by petitioner is patronage sourced income under section 1388(j)(1).  We hold that it is not.

Section references are to the Internal Revenue Code in effect for the years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

The facts have been fully stipulated and are so found.  The relevant facts are summarized below.

<u>Background</u>

A.   <u>Petitioner</u>

Petitioner's principal place of business was in New York City when it filed the petition in this case.

Petitioner was formed on September 2, 1983, under New York business corporation law. Petitioner uses the accrual method of accounting.

Petitioner is a cooperative housing corporation under section 216(b)(1) and is not tax-exempt under section 501.

Petitioner's certificate of incorporation was filed on August 30, 1983, and was amended on May 7, 1984. Petitioner's certificate of incorporation states in part that it was formed to provide homes for its stockholders by leasing apartments to them under proprietary leases that entitle them to live in the building.

Petitioner's certificate of incorporation authorizes petitioner to issue 70,000 shares of one class of common stock at a par value of $1 each. Petitioner may make distributions to its shareholders only from its earnings and profits unless petitioner is completely or partially liquidated.

Petitioner's bylaws did not authorize it to pay patronage dividends to its members in the years at issue. Petitioner's bylaws have no provisions relating to whether petitioner may distribute net earnings to its tenant-shareholders. Petitioner has no rules or regulations requiring it to distribute patronage dividends to its tenant-shareholders.

Petitioner could use net earnings to reduce maintenance. Petitioner has never paid or allocated "net margins" (the excess of its operating revenues over its cost of operations) to its

patrons as patronage dividends.  The record does not show if petitioner has ever had net margins.

Petitioner's bylaws require petitioner to hold an annual meeting of the shareholders to elect directors and to conduct other business.  The bylaws also provide for special meetings of the shareholders.  Petitioner must give written notice of all shareholders' meetings to each shareholder.  Under the bylaws, each shareholder has one vote at each shareholder's meeting for each share of stock in his or her name.  The bylaws permit proxy voting at shareholder's meetings.  Petitioner's bylaws require petitioner to have at least 3 but not more than 7 directors, the majority of whom must live in petitioner's building.  The board of directors manages petitioner, oversees its operations, oversees the management company, and holds meetings not less than once every 8 weeks to discuss problems referred to the Board. Directors serve without pay unless pay is approved by shareholders owning two-thirds of the outstanding shares.

Petitioner generally maintains the building and its grounds, fixtures, elevators, lighting and heating, and other common areas by hiring a superintendent and janitors.  Petitioner's management agent collects rents from petitioner's shareholders, keeps petitioner's books, pays petitioner's expenses, prepares petitioner's annual operating budget to be approved by petitioner's directors, and hires and supervises petitioner's

employees.  Petitioner provides laundry facilities for its tenant-shareholders.

Petitioner is not required to rebate to its members the excess of its charges collected from them over its operating costs, and its members have no right to receive those distributions.

B.    Petitioner's Proprietary Lease

Petitioner's tenant-shareholders, because of their ownership of stock in the corporation, may have proprietary leases[2] which entitle them to live in an apartment of petitioner.

Each shareholder must sign a proprietary lease with petitioner.  The proprietary lease used by petitioner during the years in issue referred to tenants as "lessees".  It required each lessee to pay rent (called "maintenance") in equal monthly installments.  A lessee could occupy only the apartment he or she leased.  Monthly rent equaled the lessee's pro rata share of "the estimated amount in cash which the Directors * * * determine to be necessary" to operate, maintain and improve the property, and to create a reserve for contingencies, repairs, and replacements. The lease provided that petitioner's Board of Directors "from time to time in its judgment" shall determine the annual obligation of each lessee.  The lease authorizes the Board of

---

[2] A proprietary lease allows a shareholder in a cooperative to possess an apartment in the cooperative.  Black's Law Dictionary 890 (6th ed. 1990).

Directors to "modify its prior determination and increase or diminish the amount previously determined as cash requirements" of petitioner.

Petitioner charges a maintenance fee to its tenant-shareholders that varies according to the number of shares each shareholder owns.  Petitioner collects monthly apartment maintenance payments from each tenant and a monthly parking space rental fee from some of the tenants.

C.    Petitioner's Income from Savings and Other Accounts

Petitioner earned interest income of $52,468 in 1989 and $44,041 in 1990 from various savings and money market accounts, and certificates of deposit with terms ranging from 2 months to 2 years.  The parties stipulated that petitioner was not required by law to have savings or money market accounts or certificates of deposit.D.    Characterization of Petitioner's Income

Petitioner's books and records did not distinguish between patronage and nonpatronage sourced income.  Petitioner did not prepare records for 1989 and 1990 characterizing its current earnings, liabilities, and net operating losses as patronage or nonpatronage sourced.

Petitioner did not pay patronage dividends in the years at issue.  The parties stipulated that, because petitioner did not pay patronage dividends, petitioner was not required to and did not file information returns under section 6044.  Petitioner

issued no Forms 1099-PATR (Taxable Distributions Received From Cooperatives) to its tenant-shareholders for the years at issue.

Petitioner serves its members at less than cost and realized a loss from its activities in 1989 and 1990. It did not pay tax on its investment income.

Respondent determined that petitioner's interest income of $52,468 in 1989 and $44,041 in 1990 was taxable as nonmembership income by reason of section 277.

Discussion

A. Background

The issue for decision is whether petitioner, a section 216 cooperative housing corporation, is a cooperative under subchapter T (sections 1381[3]-1388), as petitioner contends, or

---

[3] Section 1381 provides in part:

SEC. 1381(a). In General.--This part shall apply to--

    (1) any organization exempt from tax under section 521 (relating to exemption of farmers' cooperatives from tax), and

    (2) any corporation operating on a cooperative basis other than an organization--

        (A) which is exempt from tax under this chapter,

        (B) which is subject to the provisions of--

            (i) part II of subchapter H (relating to mutual savings banks, etc.), or

            (ii) subchapter L (relating to insurance companies), or

(continued...)

whether it is a membership organization under section 277[4], as respondent contends.  If petitioner is subject to subchapter T, we must also decide whether interest income petitioner received is patronage or nonpatronage sourced under section 1388(j)(1).

We consider several sections in our analysis of this case: (1) section 216, which defines cooperative housing corporations; (2) section 277, which applies to social clubs and other membership organizations; and (3) sections 1381-1388 (subchapter T), which apply to corporations that operate on a cooperative

---

[3](...continued)
   (C) which is engaged in furnishing electric energy, or providing telephone service, to persons in rural areas.

[4] Section 277 provides as follows:

SEC. 277(a). General Rule.--In the case of a social club or other membership organization which is operated primarily to furnish services or goods to members and which is not exempt from taxation, deductions for the taxable year attributable to furnishing services, insurance, goods, or other items of value to members shall be allowed only to the extent of income derived during such year from members or transactions with members (including income derived during such year from institutes and trade shows which are primarily for the education of members). If for any taxable year such deductions exceed such income, the excess shall be treated as a deduction attributable to furnishing services, insurance, goods, or other items of value to members paid or incurred in the succeeding taxable year. The deductions provided by sections 243, 244, and 245 (relating to dividends received by corporations) shall not be allowed to any organization to which this section applies for the taxable year.

basis and to farmers' cooperatives that are exempt under section 521.

We first decide whether petitioner is subject to subchapter T. If petitioner is subject to subchapter T, then we must also decide whether petitioner's interest income was patronage or nonpatronage sourced income.

B.  Whether Petitioner Is Subject to Subchapter T

1.  Background

Respondent argues that petitioner is not subject to subchapter T because it does not operate on a cooperative basis. Respondent argues in the alternative that, if subchapter T applies, petitioner's interest income is nonpatronage sourced income that cannot be offset with petitioner's patronage expenses.

Petitioner argues that it operates on a cooperative basis within the meaning of section 1381(a)(2), and that it is governed by subchapter T.

Section 1381(a) specifies the organizations that are subject to subchapter T. Petitioner is not a farmers' cooperative and is not exempt under section 521. Thus, we consider whether petitioner is a corporation "operating on a cooperative basis". Sec. 1381(a)(2). If a corporation operates on a cooperative basis under section 1381(a)(2), then it is subject to subchapter T. Trump Village Section 3, Inc. v. Commissioner, T.C. Memo. 1995-281.

2. Whether a Section 216 Cooperative Housing Corporation Is a Cooperative Under Subchapter T

In Park Place, Inc. v. Commissioner, 57 T.C. 767 (1972), we held that the taxpayer was a cooperative under subchapter T because it was a section 216 cooperative housing corporation. We concluded that:

> We disagree with the Commissioner's assertion that subchapter T, section 1381, * * * does not apply. Part I of that subchapter applies to the taxable year of any corporation operating on a cooperative basis after December 31, 1962, and that necessarily includes a section 216 cooperative housing corporation. [Citation omitted.]

Id. at 779.

The parties have stipulated that petitioner is a section 216 cooperative housing corporation. Thus, as we discuss further below in par. B-3-a, we conclude that petitioner is subject to the provisions of subchapter T. Id.

3. Subordination of Capital, Control by Members, and Allocation of Profit to Members

In Puget Sound Plywood, Inc. v. Commissioner, 44 T.C. 305, 308 (1965), we identified three factors that we said form the core of economic cooperative theory:

> (1) Subordination of capital, both as regards control over the cooperative undertaking, and as regards the ownership of the pecuniary benefits arising therefrom; (2) democratic control by the worker-members themselves; and (3) the vesting in and the allocation among the worker-members of all fruits and increases arising from their cooperative endeavor (i.e., the excess of the operating revenues over the costs incurred in generating those revenues), in proportion to the worker-members' active participation in the cooperative endeavor.

a.  Respondent's Contention That Park Place Does Not Control

Respondent contends that the fact that we applied the Puget Sound factors in Trump Village Section 3, Inc. v. Commissioner, supra, shows that Park Place does not establish that section 216 cooperative housing corporations are subject to subchapter T and that we should apply the Puget Sound factors to decide whether a section 216 cooperative housing corporation operates on a cooperative basis for purposes of subchapter T.  We disagree.

There is no indication that the parties in Trump Village asked the Court to consider (or that the Court did consider) whether Park Place establishes that a section 216 cooperative housing corporation operates on a cooperative basis for purposes of section 1381.  Thus, Trump Village does not bar our reliance on Park Place.

Sections 216 and 1381 both use the term "cooperative".  Congress' use of the same word in both sections supports the inference that a "cooperative" housing corporation under section 216 is operated on a "cooperative" basis for purposes of section 1381.  The legislative history of the Revenue Act of 1942, ch. 19, tit. I, sec. 128, 56 Stat. 798, 826, which added section 23(z) (the predecessor to section 216) to the Code, states:

> The definitions of the terms "cooperative apartment corporation" and "tenant-stockholder" prescribe certain standards which are designed to safeguard the revenue by assuring that the apartment corporations involved are bona fide cooperative apartment corporations and that the individuals entitled to deductions under section 23(z) are bona fide tenant-stockholders of such corporations.

S. Rept. 1361, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 577.

We interpret this to mean that Congress expected that a cooperative apartment corporation (the predecessor to a cooperative housing corporation) would be operated as a cooperative.

    b.  Respondent's Contention That Petitioner Does Not Operate as a Cooperative

Respondent argues that petitioner does not meet the Puget Sound factors and thus does not operate on a cooperative basis. We disagree.  First, petitioner meets the subordination of capital factor because its tenant-shareholders and patrons are identical and petitioner operated for the benefit of its patrons. Second, petitioner is democratically controlled by its tenant-stockholders.  The fact that petitioner's shareholders may vote by proxy is akin to voting by absentee ballot.  See Rev. Rul. 75-97, 1975-1 C.B. 167 (a farmer's cooperative is not denied exempt status by allowing proxy voting by shareholders).  Also, the fact that petitioner's shareholders have one vote for each share they own (instead of one vote per shareholder) and that they own shares based on the relative sizes of their various dwelling units is not contrary to democratic principles.  The ownership percentage of shareholders of a housing cooperative is not only a measure of their investment; it is also a measure of their relative "patronage" of the housing cooperative.  Third, petitioner did not fail to allocate profits to its members; in

fact, it operated at a loss in the years at issue. We conclude that petitioner is a cooperative under the three factors stated in Puget Sound Plywood, Inc. v. Commissioner, supra, and that petitioner operates on a cooperative basis under section 1381(a)(2).

Because petitioner is subject to subchapter T, it is not subject to section 277. Buckeye Countrymark, Inc. v. Commissioner, 103 T.C. 547, 581 (1994); Trump Village Section 3, Inc. v. Commissioner, T.C. Memo 1995-281; see also Landmark, Inc., v. United States, 25 Cl. Ct. 100 (1992). In Buckeye Countrymark, Inc., v. Commissioner, supra at 581, we said that "the provisions of section 277 conflict with the provisions of subchapter T and that the application of section 277 to nonexempt cooperatives would lead to absurd or futile results."

C.   Whether Petitioner's Interest Income Is Patronage-Sourced
     Income

Even if petitioner is a cooperative subject to subchapter T, petitioner must pay tax on its investment income if the interest was not patronage sourced. Petitioner bears the burden of proving that its interest income is patronage sourced under subchapter T. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner argues that its interest income is patronage sourced because petitioner earned the interest on funds its

14

shareholders deposited with petitioner to pay its expenses. We disagree.

Subchapter T prohibits cooperatives from using patronage losses to offset nonpatronage income. Buckeye Countrymark, Inc. v. Commissioner, supra at 559; Certified Grocers of Calif., Ltd. v. Commissioner, 88 T.C. 238, 250 (1987). A cooperative earns patronage income from business it does with or for its patrons. Sec. 1388(a); Illinois Grain Corp. v. Commissioner, 87 T.C. 435, 450 (1986). Income is patronage sourced if it is derived from an activity that is so closely intertwined with the main cooperative effort that it may be characterized as directly related to, and inseparable from, the cooperative's principal business activity, and thus facilitates the accomplishment of the cooperative's business purpose. Illinois Grain Corp. v. Commissioner, supra at 459-460. However, if the transaction or account which produces the income merely enhances the overall profitability of the cooperative, then the income is from nonpatronage sources. Id. at 452-453. Investment income is not patronage sourced. Sec. 1.1382-3(c)(2), Income Tax Regs.

In Illinois Grain Corp. v. Commissioner, supra at 442, 459-460, the taxpayer-cooperative had a specific business need for large amounts of cash at short notice. As a result, it invested its temporary surplus funds in short-term (e.g., overnight, weekend, and 10-day or less deposits) debt instruments because it did not know when it would need the temporary surplus funds in

its business.  We held that the interest earned by the taxpayer on its short-term instruments was income from patronage sources and not investment income.  <u>Id.</u> at 460.  The taxpayer's money management activities were "inseparably intertwined with the overall conduct of its cooperative enterprise, and the interest income which it earned was therefore patronage-sourced".  <u>Id.</u>

Petitioner earned interest income from money market and savings accounts and from certificates of deposits with terms ranging from 2 months to 2 years.  The record contains no evidence linking the savings and money market accounts to petitioner's cooperative activities.  The 2-month to 2-year certificates of deposit were investments that provided income to petitioner and did not facilitate the accomplishment of petitioner's cooperative business activities.  See <u>Washington-Oregon Shippers Coop., Inc. v. Commissioner</u>, T.C. Memo. 1987-32 (taxpayer's money management activities were not integrally linked to the overall conduct of its cooperative enterprise and did nothing more than add to its overall profitability).

Petitioner alleged in the petition[5] that its interest income was patronage-sourced income that can be offset by patronage deductions.  Respondent denied this allegation in the answer.  Thus, petitioner has been on notice that the character of its

---

[5] In the petition, petitioner stated: "This is a co-operative housing, not a membership, corporation.  Further, income from ancillary sources is used to maintain and/or reduce maintenance.  Deductions are allowed.  IRC 1388(j)(1)."

interest income as either patronage or nonpatronage-sourced income has been at issue since the pleadings were filed.  A taxpayer bears the burden of proving allegations it makes in the petition when it submits a case fully stipulated.  Rules 122, 217(c)(1)(A); <u>Kitch v. Commissioner</u>, 104 T.C. 1, 5 (1995).  The stipulation does not include facts that support a finding that petitioner's interest income was patronage sourced.  The record includes nothing to suggest that petitioner's interest income was earned from required reserves or that petitioner maintained its savings and money market accounts and certificates of deposit for business, rather than investment, purposes.  Petitioner failed to carry its burden of proving that its interest income was patronage sourced under section 1388.

We hold that petitioner's interest income is taxable to petitioner as determined by respondent.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.