T.C. Memo. 2002-178


UNITED STATES TAX COURT


RICHARD B. CROW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2651-01.                    Filed July 30, 2002.


<u>Bruce C. O'Neill</u>, for petitioner.

<u>Frederic J. Fernandez</u>, for respondent.


MEMORANDUM OPINION


RUWE, <u>Judge</u>:  Respondent determined a deficiency in

petitioner's 1998 Federal income tax of $10,000 and an

accuracy-related penalty under section 6662(a)[1] of $2,000.  The

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

issues for decision are: (1) Whether a distribution of $39,295.08 from an individual retirement account is includable in petitioner's gross income for 1998; and (2) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) due to a substantial understatement of income tax.

Background

The parties submitted this case fully stipulated pursuant to Rule 122.[2] The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioner resided in Kenosha, Wisconsin, at the time he filed his petition.

Petitioner has maintained individual retirement accounts (IRAs) at TCF National Bank (the bank), formerly known as Republic Savings. On July 23, 1976, petitioner established an IRA, account number 0400014416, with the bank. During the period July 23, 1976, through August 28, 1998, periodic payments were made to this IRA. Petitioner received annual statements indicating the value of all his IRAs.

On August 28, 1998, petitioner met with Maria Koble (Ms. Koble), a representative from the bank, to discuss petitioner's

---

[2]We note that although this case was submitted fully stipulated, that does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof. Rule 122(b); Kitch v. Commissioner, 104 T.C. 1, 5 (1995), affd. 103 F.3d 104 (10th Cir. 1996).

IRA, account number 0400014416, which was invested in a certificate of deposit that was earning 1.75 percent. On that same day, petitioner withdrew the entire amount, $39,295.08, from the IRA and closed the account. The amount withdrawn from the IRA was transferred into a nonqualified annuity through American Express Life Insurance Company (AEL).[3] The nonqualified annuity consisted of the funds from the closed IRA and additional funds added by petitioner.

In 1999, petitioner received a 1998 Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, Etc., from the bank relating to his IRA, account number 0400014416. The Form 1099-R reported a gross distribution of $39,295.08 and a taxable amount of $39,295.08.

Petitioner did not include the $39,295.08 reported on the Form 1099-R on his 1998 Form 1040, U.S. Individual Income Tax

---

[3]On the "Annuity Contract Data and Application", completed in connection with the transfer of funds from petitioner's individual retirement account (IRA) to the nonqualified annuity, there is a section entitled "Annuity Plan" and an instruction to check one of three boxes indicating different annuity plans. The box for "Nonqualified Annuity" is checked. The boxes for "Individual Retirement Annuity" and "Other" are not checked. Below the heading "Annuity Plan" appears the words "If IRA:", and three choices are given. The choices are "Regular", "Rollover IRA", and "Trustee to Trustee Transfer". None of the boxes next to these choices are checked.

Return.[4]  In August 2000, respondent contacted petitioner regarding the withdrawal from the IRA and transfer of funds to the nonqualified annuity.  In response to respondent's inquiry, petitioner began to investigate the tax implications of the 1998 withdrawal and closing of the IRA.

Petitioner contacted the bank to discuss the withdrawal from the IRA and transfer of funds to the nonqualified annuity.  The bank and Ms. Koble subsequently took steps to recharacterize the August 28, 1998, transactions.  On February 1, 2001, Ms. Koble prepared and signed a "Traditional IRA Withdrawal Statement".  The document directs "the Trustee or Custodian to make a distribution from the IRA" as a transfer to the new trustee, "AEL Annuity".  The document states that the IRA, account number 0400014416, was "closed out as reg CD / should have been done as trustee transfer".  Just below this statement are the words "Bank Error".  The document is backdated to August 28, 1998, the date the funds from the IRA were withdrawn and transferred to the nonqualified annuity.

In 2001, the bank prepared a corrected 1998 Form 1099-R.  The corrected Form 1099-R reported a gross distribution of $0 and a taxable amount of $0.  On a "Retirement Account Correction Worksheet", the bank explained that it issued the corrected Form

---

[4]Petitioner's 1998 Form 1040, U.S. Individual Income Tax Return, listed his occupation as truck driver.

1099-R because "This was to have been a trustee transfer to AEL IRA Annuity, not a distribution for $39,295.08". The bank also changed the distribution code to "Trustee Transfer". The parties agree that Ms. Koble would have testified that the corrected Form 1099-R was sent to petitioner in April 2001 and should have been, but apparently was not, sent to respondent in April 2001. The parties also agree that Ms. Koble would have further testified that the bank sent the corrected Form 1099-R to respondent on February 7, 2002. Respondent has been unable to verify through his record-keeping system that the corrected Form 1099-R was sent by Ms. Koble on February 7, 2002.

As of March 12, 2002, the transferred funds from petitioner's IRA remained in the AEL nonqualified annuity. On March 18, 2002, the Court granted the parties' joint motion to submit this case fully stipulated under Rule 122. The record does not contain evidence demonstrating that the funds withdrawn from the IRA on August 28, 1998, and transferred to the nonqualified annuity that same day, have been transferred to an IRA or other qualified plan.

Discussion[5]

Generally, any amount paid or distributed out of an individual retirement plan is includable in the payee's or distributee's gross income as provided in section 72.  Sec. 408(d)(1); Arnold v. Commissioner, 111 T.C. 250, 253 (1998).  However, "rollover contributions" are not includable in gross income.  Sec. 408(d)(3); Lemishow v. Commissioner, 110 T.C. 110, 112 (1998), supplemented 110 T.C. 346 (1998).  To qualify as a rollover contribution, a payment or distribution from an individual retirement plan must be rolled over into an IRA or other qualified plan within 60 days of the payment or distribution.  Sec. 408(d)(3); Schoof v. Commissioner, 110 T.C. 1, 7 (1998); Metcalf v. Commissioner, T.C. Memo. 2002-123; sec. 1.408-4(b)(1) and (2), Income Tax Regs.

---

[5]In certain circumstances, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, sec. 7491 places the burden of proof on the Secretary.  Sec. 7491(a).  Sec. 7491(c) operates to place the burden of production on the Secretary in any court proceeding with respect to the liability of the taxpayer for penalties and additions to tax.  Sec. 7491 is effective with respect to court proceedings arising in connection with examinations commencing after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  The examination in the instant case commenced after July 22, 1998.  However, for purposes of deciding whether the $39,295.08 attributable to the IRA is includable in petitioner's gross income for 1998, we need not base our decision on the burden of proof because the record contains sufficient evidence with which to decide the issue. With respect to respondent's burden of production under sec. 7491(c) for the accuracy-related penalty, see infra page 11.

Rev. Rul. 78-406, 1978-2 C.B. 157, states that the direct transfer of funds from one IRA trustee to a new IRA trustee which involves no payment or distribution of funds to the IRA participant is not a rollover contribution because the funds are not within the direct control or use of the participant.[6]  See also <u>Martin v. Commissioner</u>, T.C. Memo. 1992-331, affd. without published opinion 987 F.2d 770 (5th Cir. 1993).  The revenue ruling further states that this conclusion would apply whether the bank trustee initiates, or the IRA participant directs, the transfer of funds.  Rev. Rul. 78-406, 1978-2 C.B. at 157-158.  Thus, Rev. Rul. 78-406, <u>supra</u>, indicates that a trustee-to-trustee transfer which otherwise meets the requirements of the revenue ruling is not a taxable transaction because no amount is treated as paid or distributed out of an IRA.

In the instant case, petitioner appears to argue that the funds withdrawn from the IRA on August 28, 1998, are not includable in gross income because either (1) the bank mistakenly rolled over the funds into a nonqualified annuity instead of correctly rolling over the funds into an IRA or other qualified plan or (2) the bank mistakenly rolled over the funds instead of correctly making a trustee-to-trustee transfer to an IRA or other qualified plan.  The parties dispute whether the bank made a

_____

[6]We note that, although entitled to consideration, revenue rulings are not precedent.  <u>Dixon v. United States</u>, 381 U.S. 68, 73 (1965).

mistake and, assuming a mistake was made, whether petitioner took the necessary steps to correct the mistake and transfer the funds to an IRA or other qualified plan.[7]

In <u>Wood v. Commissioner</u>, 93 T.C. 114 (1989), we discussed the effect of a bookkeeping error committed by a financial institution during the process of rolling over funds into an IRA. In that case, the taxpayer received a distribution of cash and stock from a profit-sharing plan and then established an IRA. The taxpayer was aware that his distribution was required to be rolled over into an IRA within 60 days of receipt. Acting with this knowledge, the taxpayer did everything he could reasonably be expected to do in order to roll over his lump-sum distribution as required by law. For example, the taxpayer met with an IRA trustee, instructed the IRA trustee to open the IRA, and transferred the entire distribution to the IRA trustee for deposit in his IRA. The IRA trustee assured the taxpayer that the taxpayer's request would be carried out.

However, because of a bookkeeping error by the IRA trustee, certain of the trustee's records indicated that part of the distribution had not been transferred to the IRA within the requisite 60-day period. Approximately 4 months after the

---

[7]Respondent states that he did not assert the 10-percent additional tax on amounts received from a qualified retirement plan under sec. 72(t) because petitioner was over the age of 59 1/2 at the time his IRA was closed.

expiration of the 60-day period, the trustee corrected its records to reflect that all of the distribution had been transferred to the taxpayer's IRA rollover account.  The parties stipulated that the taxpayer's IRA rollover account was established and satisfied the requirements of the Internal Revenue Code.  The taxpayer did not become aware of the error until after the Commissioner questioned his failure to report the lump-sum distribution on his tax return.  We held that the financial institution's bookkeeping error did not preclude rollover treatment because, in substance, the taxpayer had satisfied the statutory requirements.

In Schoof v. Commissioner, supra at 11, we held that the failure of a fundamental element of the statutory requirements for an IRA rollover contribution, namely, the qualification of an IRA trustee, required distributions from an IRA to be includable in the taxpayers' gross income.  We relied on the following passage to support our holding:

> "Where the requirements of a statute relate to the substance or essence of the statute, they must be rigidly observed.  On the other hand, if the requirements are procedural or directory in that they do not go to the essence of the thing to be done, but rather are given with a view to the orderly conduct of business, they may be fulfilled by substantial compliance."  [Schoof v. Commissioner, supra at 11 (quoting Rodoni v. Commissioner, 105 T.C. 29, 38-39 (1955)); citations omitted.]

We distinguished <u>Wood v. Commissioner</u>, <u>supra</u>, on the ground that it involved procedural defects in the execution of a rollover. <u>Schoof v. Commissioner</u>, 110 T.C. at 11.

The evidence in the record indicates that Ms. Koble and the bank felt that they had mistakenly characterized the transactions and that they were attempting to correct their mistake. This was not the only mistake or defect in the rollover or transfer, nor was this defect corrected in a timely manner. The parties stipulated that, as of March 12, 2002, the funds withdrawn from the IRA on August 28, 1998, remained in the AEL nonqualified annuity. A fundamental requirement for a rollover contribution under section 408(d)(3) or a trustee-to-trustee transfer under Rev. Rul. 78-406, <u>supra</u>, is that funds actually be rolled over or transferred into an IRA or other qualified plan. We believe that failure of this fundamental requirement extends beyond the procedural error in <u>Wood v. Commissioner</u>, <u>supra</u>, which was cured by substantial compliance and the fulfilment of the remaining requirements of the statue. Thus, like the situation in <u>Schoof v. Commissioner</u>, <u>supra</u>, we find that the failure to roll over or transfer the funds to an IRA or other qualified plan is fatal to petitioner's case.[8] Accordingly, we hold that the $39,295.08 is includable in petitioner's 1998 gross income.

---

[8]Again, we note that the parties stipulated that at the time this case was submitted the funds remained in the nonqualified annuity.

Section 6662(a) imposes a penalty equal to 20 percent of the portion of an underpayment of tax attributable to a taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. Sec. 6662(a), (b)(1) and (2). An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown on the return for the taxable year, or $5,000. Sec. 6662(d)(1) and (2).

Respondent concedes that he bears the burden of production under section 7491(c) with respect to the accuracy-related penalty. Petitioner reported tax liability of $1,020.01 on his 1998 return. We have sustained respondent's determination that petitioner has a deficiency of $10,000 for 1998. Thus, there was an understatement of tax because the deficiency exceeds the greater of 10 percent of the tax required to be shown on petitioner's 1998 return, or $5,000.

The accuracy-related penalty does not apply to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part of the underpayment and that he acted in good faith in view of the facts and circumstances. Sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The taxpayer bears the burden of

proving that he acted with reasonable cause and in good faith. Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001).

The facts and circumstances of this case do not support imposition of the accuracy-related penalty. In response to petitioner's inquiry, the bank issued a corrected Form 1099-R reporting a gross distribution of $0 and a taxable distribution of $0. The bank prepared a "Retirement Account Correction Worksheet", explaining that it issued the corrected Form 1099-R because the transaction should have been a trustee transfer to an AEL IRA. Ms. Koble prepared and signed a new "Traditional IRA Withdrawal Statement" which was intended to be retroactive to August 1998, and it indicated that there should have been a trustee-to-trustee transfer of funds from petitioner's IRA to an AEL annuity. The documents indicate that Ms. Koble and the bank felt that they had mistakenly characterized the transactions and that they were attempting to correct their mistake. Additionally, the parties agree that Ms. Koble would have testified that the bank should have sent a corrected Form 1099-R to respondent after it prepared the corrected form and that the bank did send a corrected Form 1099-R to respondent in February 2002. Although the evidence in the record indicates that the funds are still in the nonqualified annuity, we believe that petitioner had reasonable cause and acted in good faith in not reporting the distribution on his 1998 return on the basis of his

dealings with the bank and Ms. Koble and their subsequent attempts to correct the situation.  Accordingly, we hold that petitioner is not liable for the accuracy-related penalty for 1998.

<u>Decision will be entered for respondent as to the deficiency</u>.