No. 20,753.

VICTOR H. HAGLUND, *Appellee*, v. THE BURDICK STATE BANK
et al., *Appellants*.

SYLLABUS BY THE COURT.

1. ARREST OF JUDGMENT DEBTOR—*For Examination before Probate Judge
—Wrongfully Imprisoned in Jail.* In a proceeding supplemental to
execution, a sheriff holding a warrant issued under the provisions of
section 7429, General Statutes of 1915, authorizing him to arrest the
debtor and bring him before the probate judge, has no power to im-

prison the debtor in the county jail, even temporarily for safe-keep-
ing; and this is true although the arrest be made at a distance from
the county seat, which the sheriff, returning with the debtor in custody,
can not reach until late at night, when the probate judge would not
be at his office.

2. TRIAL — *Instructions — Findings.* An instruction to the jury com-
plained of was properly given and findings of fact returned by the
jury were sustained by the evidence.

Appeal from Morris district court; ROSWELL L. KING,
judge. Opinion filed April 7, 1917. Affirmed.

*Edwin Anderson,* of Council Grove, and *Frans E. Lindquist,*
of Kansas City, Mo., for the appellant; *Clad Hamilton,* of To-
peka, of counsel.

*Arthur J. Stanley, Guy E. Stanley,* both of Kansas City, and
*C. B. Daughters,* of Manhattan, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for false im-
prisonment. The plaintiff recovered and the defendants
appeal.

The plaintiff resided in Kansas City, Mo., and at the incep-
tion of the proceedings resulting in his imprisonment was
visiting his father, Charles Haglund, who resided at Burdick,
a city in Morris county, twenty-six miles distant from Coun-
cil Grove, the county seat. The Burdick State Bank was lo-
cated at Burdick. E. T. Anderson was its cashier. Edwin
Anderson was the cashier's brother, and an attorney at Coun-
cil Grove. The bank held an unsatisfied judgment rendered
on a promissory note given by the plaintiff, and instituted pro-

ceedings against him in aid of execution. Instead of taking an order of appearance for examination, the bank, through the attorney, procured a warrant of arrest to be issued and placed in the hands of the sheriff, under the provisions of section 7429, General Statutes of 1915, which reads as follows:

"Instead of the order requiring the attendance of the judgment debtor, as provided in the last two sections, the judge may, upon proof to his satisfaction, by affidavit of the party or otherwise, that there is danger of the debtor leaving the state, or concealing himself, to avoid the examination herein mentioned, issue a warrant requiring the sheriff to arrest him and bring him before such judge, within the county in which the debtor may be arrested. Such a warrant can be issued only by a probate judge or the judge of the district court of the county in which such debtor resides or may be arrested. Upon being brought before the judge, he shall be examined on oath, and other witnesses may be examined on either side; and if on such examination it appears that there is danger of the debtor leaving the state, and that he has property which he unjustly refuses to apply to such judgment, he may be ordered to enter into an undertaking, in such sum as the judge may prescribe, with one or more sureties, that he will, from time to time, attend for examination before the judge or referee, as shall be directed. In default of entering into such undertaking, he may be committed to the jail of the county, by warrant of the judge, as for a contempt."

The warrant was issued at about five o'clock in the afternoon of June 15, 1914, and the plaintiff was arrested at his father's house in Burdick at about seven o'clock in the evening. The sheriff told the plaintiff he could pay $600 or go to Council Grove. The plaintiff said he would go to Council Grove. When the plaintiff and the sheriff reached the sheriff's automobile standing in the street the cashier of the bank was there. The plaintiff's father was a depositor having funds in the bank to the amount of $600. The cashier made a talk to the plaintiff about the disgrace of being taken to Council Grove and put in jail, and asked if it would not be better to pay the note, or have his father pay it. The plaintiff owned nothing at the time except some lots in Illinois which he had traded for. They cost him $1500 and were assessed at $1200. His papers were in the house and he went for them. When he produced them the cashier observed that the plaintiff's name was not in the deed and the deed had not been recorded. The cashier urged the plaintiff to pay, and urged the plaintiff's father to pay, to save all the trouble of having to go to Council Grove. The plaintiff's

Haglund v. Bank.

father was willing to pay if the plaintiff would request it, but the plaintiff preferred to go to Council Grove. The plaintiff had read the warrant and understood he would be taken before the probate judge. An accident to the automobile caused delay, and Council Grove was not reached until about eleven o'clock at night. The sheriff placed the plaintiff in the county jail and locked him in. About seven o'clock the next morning the sheriff called the plaintiff for breakfast and the plaintiff ate breakfast in jail. After that the plaintiff saw no one until about ten o'clock in the forenoon, when the sheriff admitted the attorney for the bank into the jail. The attorney remained in the jail talking to the plaintiff until about noon, the sheriff being present part of the time. Among other things, the attorney said it would be better for the plaintiff to have the attorney telephone the plaintiff's father at Burdick to pay the note than for the plaintiff to be kept in jail and that the plaintiff was to be kept in jail until the note was paid. Because of the threat to keep him in jail until he did it, the plaintiff gave the attorney permission to telephone the plaintiff's father. About noon the probate judge, who had issued the warrant, heard from some source that the plaintiff was in jail. He went to the jail, procured a key from the women there, went in, got the plaintiff, and took the plaintiff to his office, arriving there about one o'clock in the afternoon. Sometime afterward the attorney came to the probate judge's office, told the plaintiff his father had settled the note, and said the plaintiff could go back to Burdick at any time. The attorney had telephoned the cashier at Burdick and the cashier had interviewed the plaintiff's father. The plaintiff's father related the conversation as follows:

"He told me Vic was in jail, and it would be the best thing if you go over to the bank and would write out a note and then they will let him out. And another thing he says, 'He ain't got no folks in there and nobody knows him there,' he says; 'I don't like to sign any note,' says I, 'because he says last night that he didn't want to ask me to do it.' 'Well, you had better come over to the bank and you sign a note and then I will telephone to Council Grove and he will get out and be free.'"

The bank collected from the plaintiff's father the sum of $600, which the jury found to be $124.10 more than the debt, with interest to the time of satisfaction. The plaintiff settled

with his father for the money which his father paid. This story is taken from the evidence favorable to the plaintiff, upon which, under the familiar rule, it is assumed the verdict in favor of the plaintiff rests.

The jury were instructed that, notwithstanding the fact the sheriff arrived in Council Grove with the plaintiff in the night-time, when the probate judge would not be at his office, the sheriff had no right to lock the plaintiff in jail and keep him there until the next day. The defendants say the instruction was wrong, and was prejudicial. In view of other instructions given it is not entirely clear that the instruction complained of would have been prejudicial if erroneous, but it was not erroneous. Imprisonment under civil process still occupies a restricted field in the jurisprudence of this state, but none of the restrictions will be removed and the field enlarged by judicial interpretation. In the case of *Hynes v. Jungren,* 8 Kan. 391, the action was one for false imprisonment. In a civil action for debt, Hynes procured the arrest of Jungren on process issued to a constable by a justice of the peace. The syllabus reads:

"Where an order of arrest commands the officer to arrest the debtor and take him forthwith before the justice, the officer is not justified in arresting and confining him in jail." (¶ 2.)

In the opinion it was said:

"The judge charged the jury that the original process in the hands of the constable justified him in making the arrest and obeying its commands. This, to say the least, was as favorable to plaintiffs as the facts would permit. . . . The order of arrest commanded the constable to arrest Jungren and bring him forthwith before the justice. Instead of so doing he, in conjunction with Hynes, carried him to the county jail and kept him there for a part of a day before taking him to the justice. The excuse which they attempted to make on the trial in the district court was, that Jungren was intoxicated. In reference to this the learned judge charged the jury as follows: 'This if true would be no justification to disobey the command of the writ and incarcerate the plaintiff in jail, and keep him there excluded from counsel and friends.' This we think is correct. It was the duty of the constable to take his prisoner *forthwith* before the justice; and if the latter found him to be in such a condition as not to be able to protect his rights in court, he could make such order for his safe keeping, and for a postponement of the case, as should be right and proper." (p. 395.)

In the present case the warrant required the sheriff to arrest the plaintiff and bring him before the probate judge. The

warrant was the measure of the sheriff's authority. He could arrest the plaintiff and take him before the probate judge, but nothing more. He could not incarcerate the plaintiff for any purpose. Furthermore, the probate judge could not order incarceration of the plaintiff, except as for contempt for disobedience of an order made after the plaintiff had been brought before him for examination. In arrest and bail cases the statute authorizes the sheriff to commit the defendant to jail, to be kept in custody until discharged by law. (Civ. Code, § 154.) In case of execution against the person, the execution authorizes the sheriff to commit the execution debtor. (Civ. Code, § 507.) The power to commit to jail was withheld from the sheriff in supplemental proceedings of the kind invoked by the Burdick bank, and the defendant could be restrained of his liberty no further than the statute, and the warrant issued in compliance with the statute, required. The road to the probate judge and the road to the county jail were separate roads, and the sheriff could not abandon the one because night inconveniently overtook him, and take the other.

The defendants cite the case of *Grab v. Lucas*, 156 Wis. 504, in which it was said:

"Officers having persons under arrest in their custody may lawfully place them for safe-keeping in any proper and suitable place such as a city or county jail, otherwise they could not be safely kept. While the primary function of a jail is a place of detention for persons committed thereto under sentence of court, they are also the proper and usual places where persons under arrest or awaiting trial are kept till they appear in court and the charge against them is disposed of." (p. 506.)

In that case the defendant had been arrested on civil process, had been taken before the justice of the peace issuing the process, and had been committed to the custody of the constable for failure to give the bond required of him. The defendant was in default for failure to comply with an order of court, and safe-keeping was the purpose of his detention.

In this case the plaintiff occupied the legal status of the defendant in the case of *Hynes v. Jungren*, who was put in jail while on the way to the court which had required his presence. The defendants ask, What was the sheriff to do? The answer is, do what the warrant directed, and if delayed in reaching or finding the probate judge, do as the sheriff would have done if unable to get to Council Grove at all the night of

the arrest. Invasion of a debtor's liberty by merely taking him to a court to be examined respecting his property is so slight, and is attended with so little loss of respect and self-respect, while invasion by imprisonment in the county jail is so great, so odious, and attended by so much opprobrium, that the court declines to recognize power to imprison as an incident to the authority vested in the sheriff by a warrant issued under the statute quoted. If the statute be weak, the legislature can make it as drastic as may be desired, keeping in mind, however, the constitutional provision prohibiting imprisonment for debt except in case of fraud. (Bill of Rights, § 16.)

The court instructed the jury that if the defendants did not direct the sheriff to imprison the plaintiff, or to keep him in prison after he was there, the sheriff alone, who was not sued, would be liable for the illegal detention. This instruction is complained of. It was given for the benefit of the defendants, who gave testimony sufficient to relieve them from liability if the testimony were believed and the instruction were followed.

The verdict was for $1635.26—$1500 plus $135.26, the amount with interest which the bank collected above the amount of its debt. The jury returned the following special findings:

"1. What was the amount of the judgment and costs upon which the proceedings set out in the plaintiff's petition were had? Answer: $475.90.

"2. What was the sum paid to the bank by Charles Haglund, for his son Victor? Answer: $600.00.

"3. If the payment referred to in the last question exceeded the amount due on the judgment in question, how much was the excess? Answer: $124.10.

"Apply on No. 3, $11.16 interest, excess $124.10, total $135.26."

It is said there was no evidence to sustain the first and second findings, and that as a consequence the verdict should be set aside and a new trial granted. There is no ground whatever for the challenge to the second finding. The proof was abundant and clear, and in fact there was no dispute about the matter. Documentary evidence furnished data for the computation, the result of which was stated in the first finding, and the question really called for nothing but the result of a mathematical calculation. As a matter of fact, the

third finding is $5.51 too large. If the error in calculation had been called to the attention of the trial court doubtless the judgment would have been reduced accordingly. Modification of the judgment by this court is not requested.

The judgment of the district court is affirmed.