No. 68,472

CARL LYLE DOZIER, *Appellant,* v. HELEN DOZIER, *Appellee.*

(850 P.2d 789)

Opinion filed April 16, 1993.

*John Anderson, Jr.,* of Overland Park, argued the cause and was on the brief for appellant.

*John C. Eisele,* of John C. Eisele, Chartered, of Overland Park, argued the cause, and *George R. McGrew,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: The parties to this appeal were divorced in 1974. The appellant, Carl Lyle Dozier, sued his ex-wife, Helen Dozier, seeking damages for false arrest and imprisonment and for abuse of process. The trial court granted summary judgment in favor of Helen Dozier. This appeal followed.

As part of the divorce in 1974, Carl and Helen entered into a written agreement that provided for, among other things, alimony and child support. The alimony was payable to Helen until her death or remarriage. Upon finding the agreement fair and equitable, the trial court incorporated the agreement into the divorce decree.

In the years following the divorce, the parties initiated numerous citations, garnishments, and hearings. Carl concedes a majority of these actions were Helen's attempts to collect money from him. Only those actions pertinent to this appeal will be discussed.

In the spring of 1990, Helen filed a motion to determine delinquency of the entire judgment. A citation in contempt also was issued for Carl to show cause why he should not be punished for failure to pay, among other things, alimony. The trial court found that, as of March 1, 1990, Carl owed Helen $47,350 in unpaid alimony plus $24,072.71 in accrued judgment interest. The court did not find Carl in indirect contempt and stated that as long as Carl paid $200 monthly he would not be found in contempt for failure to pay the entire judgment. The court noted that Helen could use "any lawful means to collect any portion of the outstanding judgments."

On April 10, 1990, after a hearing held in conjunction with various motions filed by the parties, the trial court found that Carl secretly had withdrawn funds from the 401K contribution plan established by his employer, had withheld this information from the court at two previous hearings, and with this money

had paid some overdue bills and had given a friend $3,000 to hold for him. The court ordered Carl to apply the $3,000 to the delinquent alimony judgment. On May 8, 1990, Helen filed an accusation in contempt, asserting that Carl had failed to apply the $3,000 to the delinquent alimony judgment as ordered by the trial court. On that same day, the trial court issued a citation in contempt, directing Carl to appear before the court on May 24, 1990, to show cause why he should not be punished for noncompliance. Carl, however, was not served with the May 8 citation and order because the process server was unable to locate him.

On June 19, 1990, based upon a verified accusation in contempt and motion for show cause order, the trial court issued a bench warrant for Carl's arrest, pursuant to K.S.A. 20-1204a(c). The court accepted Helen's allegation that Carl was secreting himself to avoid process. Carl filed a pro se response on June 22, 1990. He denied that he had breached the trial court's April 10 order or that he was secreting himself to avoid process.

Although not raised as an issue in this case, it is interesting that when Helen's attorney filed the second accusation in contempt (June 19, 1990), he personally verified the accusation and requested a bench warrant because Carl allegedly was secreting himself. Helen's attorney mailed a copy of the June 19 accusation in contempt to Carl at an address that appears in the record before us for the first time in the certificate of service on the June 19 accusation.

It seems obvious that Carl received the accusation that was mailed to the new address, because three days later Carl filed a response and listed the new address as his "temporary" address. Unfortunately, Carl failed to serve a copy of his response on anyone. The response was filed in the official court file and languished there for months; it was not noticed by any of the parties or the trial judge until after Carl's arrest on the bench warrant.

The arrest warrant issued does not show an address for the defendant, and it languished at the Johnson County Sheriff's office until October 4, 1990, when Helen and her lawyer observed Carl in Miami County. He immediately was arrested on the outstanding warrant. After being transported to Johnson County, he posted bond and was released.

On the basis of this arrest and detention, in September 1991, Carl filed suit against Helen seeking damages for causing his false arrest and imprisonment and for abuse of process. Helen filed a motion to dismiss. The trial court granted Helen's motion, which the court treated as a motion for summary judgment. Carl appealed the trial court's decision to the Court of Appeals. The case was transferred to this court, pursuant to K.S.A. 20-3018(c).

On appeal, Carl's main argument is that Helen had him imprisoned to collect a debt arising out of a contract made in a divorce case, contrary to § 16 of the Kansas Constitution Bill of Rights, which provides that "[n]o person shall be imprisoned for debt, except in cases of fraud."

Carl readily concedes, and rightly so, that this court has held court-ordered alimony can be enforced by an attachment for contempt and imprisonment for willful disobedience of a court order to pay alimony and that such a proceeding cannot be regarded as violating the constitutional provision prohibiting imprisonment for debt. *In re Peters,* 124 Kan. 455, 457, 260 Pac. 975 (1927). See *Brayfield v. Brayfield,* 175 Kan. 337, 264 P.2d 1064 (1953); *Kemmerle v. Kemmerle,* 171 Kan. 312, 232 P.2d 220 (1951). Carl's argument is that this court should draw a distinction between contempt proceedings to enforce court-ordered alimony that is subject to modification and alimony arising out of a contract between the parties that is incorporated into the divorce decree and not subject to modification. He argues that contractual alimony is a debt and that the constitution prohibits his imprisonment because of that debt. He attempts to distinguish *Peters, Brayfield,* and *Kemmerle* on the basis they involve court-ordered alimony only and have no contractual characteristics.

Carl argues:

"The settlement agreement resulted in a contract and the debt arises upon that contract. To allow defendant to use the contempt proceedings to collect such a contractual debt would be to allow her the benefit of a court decree fixing maintenance or alimony allowance payments that are not subject to modification and at the same time claim such debt is not a debt arising upon contract and therefore is collectible through threat of imprisonment. Such is neither logical, reasonable, nor fair."

He further argues that the trial court must have the right to modify a judgment for alimony if a court is to exercise contempt power to enforce the order.

He cites cases from Maryland, Texas, and California to support his argument. We do not deem it necessary to discuss those cases as we believe the applicable law to be well established in Kansas. The law in this state is that a contract between the parties to a divorce action that is approved by the trial court and merged into the judgment also retains its contractual characteristics. *Fiske v. Fiske*, 218 Kan. 132, 135, 542 P.2d 284 (1975); *In re Estate of Sweeney*, 210 Kan. 216, 224, 500 P.2d 56 (1972); *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 430, 747 P.2d 187 (1987); *Oehme v. Oehme*, 10 Kan. App. 2d 73, Syl. ¶ 1, 691 P.2d 1325 (1984), *rev. denied* 236 Kan. 876 (1985); *Long v. Brooks*, 6 Kan. App. 2d 963, Syl. ¶ 1, 636 P.2d 242 (1981).

Carl overemphasizes the contractual characteristics. We have not declared that contractual alimony incorporated into the divorce decree is no longer a judgment of the court. *Sweeney* and subsequent cases stand for the proposition that such alimony is contractual with regard to interpreting the parties' agreement, but is a judgment with regard to enforcement. The *Sweeney* court explained:

"By its judicial sanction through confirmation, the court makes the agreement judicial in character, entitling the parties to the full benefit of the agreement which is no longer executory but executed. When confirmed, the executed agreement is subject to enforcement pursuant to its terms and the decree of the court. In determining the effect of the decree, the agreement is properly to be considered, and this court is of the opinion the confirmation of the agreement and its merger into the decree does not abolish the contractual aspects of the agreement, but leaves the court in the position to construe the provisions of the agreement consistent with the facts and circumstances and the expressed intention of the parties." 210 Kan. at 224.

We find Carl's arguments unpersuasive. Whether a trial court is authorized to modify the amount of alimony, or maintenance as it is now termed, is not the determinative factor. Furthermore, this case does not involve interpretation of an agreement incorporated into a divorce decree. Thus, the contractual aspects of such an agreement with regard to alimony are not at issue. This case involves enforcement of a debt arising from nonpayment of alimony. Enforcement of such a debt is judicial in nature, not contractual. Thus, contempt proceedings, arrest, and imprisonment are appropriate means of enforcing the willful refusal to pay

the alimony judgment and do not violate the constitutional prohibition against imprisonment for a debt.

Our view follows the general rule.

"In the majority of the states the usual method of enforcing an order in a divorce action, whether the order is for temporary alimony, permanent alimony, or counsel fees, suit money, or costs, is by means of a commitment for contempt of court after notice to the obligor spouse and a demand for payment. . . .

. . . .

"Even though the constitutions of the various states commonly prohibit imprisonment for debt, it is widely held that the payment of temporary alimony, counsel fees, costs, suit money, and permanent alimony may be enforced by imprisonment for contempt of court since alimony, whether temporary or permanent, an obligation of the marital community, or an award for attorney fees, does not constitute a debt within the meaning of such constitutional provisions. This is true even though the decree incorporates an agreement of the parties or expressly adopts such agreement." 24 Am. Jur. 2d, Divorce and Separation §§ 798, 800, pp. 779, 781-82.

The trial court did not err in granting summary judgment on Carl's abuse of process claim based upon Carl's argument that he was being imprisoned on a debt.

Carl next argues that, based on the entire record, the trial court erred in granting summary judgment. His argument here is difficult to follow. It is three pages in length and cites two cases. The first page and a half gives the procedural history. Carl then seems to argue the bench warrant required the sheriff to arrest Carl and bring him before the judge, not place him in jail.

Carl cites language from *Haglund v. Bank*, 100 Kan. 279, 284, 164 Pac. 167 (1917), as authority. His reliance on *Haglund* is misplaced. In *Haglund*, a bank obtained judgment against Haglund on a promissory note. It then obtained a warrant to arrest the defendant. Haglund was arrested, put in jail, and held until his father paid the bank. The statute specifically restricted the warrant to be issued by a judge in the county where the defendant resided or may be arrested and to bring him "before such judge, within the county in which the debtor may be arrested." G.S. 1915, § 7429. (*Haglund*, 100 Kan. at 280). Interesting is the fact the court instructed the jury that the bank had no responsibility if it did not direct the sheriff to imprison the plaintiff on the warrant or to keep him in prison on the warrant after he was

there. The evidence is such that a factfinder could have found the bank directed the sheriff to imprison the plaintiff and/or directed that he be held in jail until his father paid his debt, and the jury found for the plaintiff. This court clearly confined its holding to the statute in question in which the legislature had only authorized the debtor to be brought to court for examination.

In the case at bar, K.S.A. 20-1204a does not direct the sheriff to bring the defendant before a judge within the county in which he is arrested. Thus, it contemplates that the defendant may be transported a considerable distance to reach the county in which the warrant was issued. Finally, the statute provides: "The court may make such orders concerning the release of the person pending the hearing as the court deems proper." K.S.A. 20-1204a(c).

Here, the record before us is silent how Carl was arrested and subsequently transported to Johnson County, but the parties in their briefs make it clear he was arrested and spent some period of time in jail. There is not a scintilla of evidence that Helen directed he be incarcerated or retained in jail. She did cause the warrant to issue and drew the warrant and Carl's whereabouts to the attention of the Miami County authorities. That does not establish liability under *Haglund.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." K.S.A. 1992 Supp. 60-256(c). See *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

"To avoid summary judgment, the nonmoving party must establish each element of the cause of action. The moving party is entitled to a judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *St. Francis Regional Med. Center, Inc. v. Hale,* 12 Kan. App. 2d 614, Syl. ¶ 1, 752 P.2d 129 (1988).

The trial court found Carl's claim of false arrest and imprisonment failed, as a matter of law, because the restraint was legal. The court reasoned that the bench warrant, which initiated Carl's arrest, was "regular and legal in form" and issued by a district court judge.

The bench warrant was issued pursuant to K.S.A. 20-1204a(c). Carl claims his restraint was illegal because the trial court failed to follow the procedure set forth in K.S.A. 20-1204a(c), which provides in pertinent part:

"If . . . the court finds at a hearing held on motion of a party to the civil action that the person allegedly in contempt is secreting himself or herself to avoid the process of the court, the court may issue a bench warrant commanding that the person be brought before the court to answer for contempt."

Carl contends the statute obligated the trial court to conduct a hearing on Helen's motion that he was secreting himself before issuing a bench warrant.

There is no evidence of a formal hearing in the record on appeal. Helen's motion and the bench warrant both were filed on June 19, 1990. According to the trial court's memorandum decision, the following events transpired:

"Service of the May 8th order to appear and show cause could not be made because Deputy K. Collins was unable to locate [Carl]. On June 19, 1990, [Helen] again filed a motion for an order requiring [Carl] to appear and show why he should not be held guilty of indirect contempt of the orders of the Court for his failure to comply with the April 10th Court order. At the same time, [Helen] moved the Court for the issuance of a bench warrant pursuant to K.S.A. 20-1204a(c) alleging for the reason that [Carl] was secreting himself to avoid process. The Court sustained [Helen's] motion, finding that [Carl] was secreting himself for the purpose of avoiding the process of the court, and issued the bench warrant on June 19, 1990."

The trial court directed law enforcement to arrest Carl and bring him before the court, based upon a motion, Helen's attorney's verified affidavit, and a review of the court file. The trial judge also knew the history of the case, having had considerable involvement in it over the years.

It may be questioned how a trial court can conduct a formal hearing on whether a party is secreting himself or herself if the party is secreted. The statute requires that a hearing be held and, implicitly, that notice have been given. The statute, however, does not expressly require the presence of the party at the hearing. The legislature's purpose in requiring a trial court to conduct a hearing before issuing a bench warrant is to protect

the due process rights of the person allegedly secreting himself or herself.

We hold the bench warrant was issued properly. Even if the bench warrant had been issued improperly, that fact alone would not mean Helen *caused* the false arrest and imprisonment of Carl. Helen informed the trial court of the circumstances as she perceived them and left it to the court to take such action as the court deemed proper. It was then the trial court's responsibility to follow the contempt procedures set forth in K.S.A. 20-1204a. *Cf. Thurman v. Cundiff,* 2 Kan. App. 2d 406, Syl. ¶ 5, 580 P.2d 893 (1978) ("A defendant is not liable for false arrest if he merely informs officers of circumstances and leaves it to the officers to take such action as the officers deem proper."). Thus, the trial court did not err in granting summary judgment in favor of Helen on Carl's claim of false arrest and imprisonment.

Affirmed.