NOT DESIGNATED FOR PUBLICATION

No. 118,657

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THOMAS NOLL, as Heir-at-Law of MATTHEW NOLL,
*Appellant*,

v.

KAYLA HIGGINS and AMY HIGGINS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed August 30, 2019.
Affirmed.

*Phillip L. Turner*, of Turner & Turner Law Office, of Topeka, for appellant.

*Peter C. Robertson* and *Dan Heinz*, of Crow & Associates, of Leavenworth, for appellees.

Before BUSER, P.J., PIERRON and BRUNS, JJ.

BUSER, J.: This appeal arises from litigation over the tragic death of Matthew Noll. After Matthew's death, his father, Thomas Noll, filed a lawsuit alleging several claims, including wrongful death, against Matthew's former girlfriend, Kayla Higgins, and her mother, Amy Higgins (the Defendants). After discovery was complete, the Defendants filed a motion for summary judgment. The district court granted the Defendants' motion. Thomas appeals.

Upon our review, we can find no reversible error and, as a result, we affirm the district court's order of summary judgment in favor of the Defendants.

1

FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2014, Matthew went over to the Higgins' property to spend time with his girlfriend, Kayla, and her family. At the time, numerous other Higgins family members and relatives were present at the residence. While there, Kayla looked at Matthew's cell phone and discovered that he had sent a photograph of his penis to someone. Kayla confronted Matthew about the photograph and eventually asked him to leave. Matthew got into his truck but did not promptly leave the property. Shortly thereafter, Kayla's mother, Amy, found Matthew's lifeless body in his truck. Matthew died at the scene from injuries sustained from a single gunshot wound to the head. The Jefferson County Sheriff's Office and Coroner investigated the circumstances, and Matthew's death was ruled a suicide.

On July 31, 2015, Thomas filed a petition against the Defendants regarding Matthew's death. Thomas brought the following claims: Count I, Intentional Infliction of Emotional Distress; Count II, Negligence; Count III, Wrongful Death; and Count IV, a claim alleging conversion entitled "Additional Damages." Thomas later amended the petition to add an additional Count V, alleging, in the alternative, Wrongful Death by Kayla, and Count VI, alleging, in the alternative, Wrongful Death by Amy.

The Defendants filed an answer to Thomas' lawsuit in which they generally denied all the claims. After extensive discovery was concluded, the Defendants filed a motion for summary judgment on all claims. The motion asserted that the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file showed there were no genuine issues of material fact and Thomas could not prove all of the elements of any of the claims.

Thomas filed a response to the motion. In his response, Thomas made four objections to the Defendants' uncontroverted contentions of fact. First, Thomas asserted

2

the contentions were "compound statements consisting of a number of various statements in violation of [Supreme Court Rule] 141(a)(1) [(2019 Kan. S. Ct. R. 211)]." Second, Thomas argued that disputed material facts existed which necessarily precluded summary judgment. Third, Thomas argued that facts quoting Matthew's statements were hearsay and inadmissible. Finally, Thomas asserted the district court erred by not adopting his additional 57 paragraphs of disputed facts in considering the Defendants' summary judgment motion.

The district court incorporated by reference the Defendants' uncontroverted contentions of fact which comprised 28 paragraphs. It found there were no genuine issues as to any of the material facts. As for its conclusions of law, the district court stated: "The authorities submitted by Defendants are found to be on point and controlling. They are incorporated by reference herein." The district court analyzed each count in the petition but found there were no issues of material fact remaining and Thomas' claims were without merit as a matter of law. The district court granted summary judgment in favor of the Defendants.

Thomas filed a timely notice of appeal.

STANDARDS OF REVIEW AND LAW
REGARDING SUMMARY JUDGMENT MOTIONS

We begin the analysis with a brief summary of our standards of review and Kansas law regarding summary judgment motions.

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is

3

sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

### CLAIMS OF ERROR RELATING TO THE DISTRICT COURT'S FINDINGS OF UNCONTROVERTED CONTENTIONS OF FACT

Thomas claims the district court erred in finding there was no genuine issue as to any material facts and in adopting the Defendant's 28 uncontroverted contentions of fact as the district court's findings of fact upon which it based its legal conclusions. A district court may adopt a party's statement of uncontroverted facts as the basis for its decision. See *Money v. Ft. Hays State Univ. Endowment Ass'n*, 31 Kan. App. 2d 322, 325-26, 64 P.3d 458 (2003). In his appellant's brief, Thomas' objections to the uncontroverted contentions of fact may be grouped in four general categories. We will similarly consider those objections in categories as we analyze this issue.

*Defendants' Compliance with Supreme Court Rule 141(a)(1)*

With regard to the Defendants' 28 uncontroverted contentions of fact, Thomas repeatedly complains that numerous individual paragraphs contain "a compound statement consisting of a number of various statements in violation of Supreme Court Rule 141(a)(1)." The Defendants counter that the paragraphs comply with the rule because "each identified the specific source of the uncontroverted contentions of fact, including proper citation to the record with precise reference to the pages and lines of the documents referenced."

4

"Interpretation of a Supreme Court rule is a question of law subject to unlimited review." *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013).

Preliminarily, we observe that Thomas' entire argument regarding Supreme Court Rule 141 consists of only one sentence which he repeats as to each of the individual statements that he claims are objectionable. We do not consider a one sentence argument as adequate briefing. Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018). As a procedural matter, this argument is waived. For the sake of completeness, however, we will address the merits.

Kansas Supreme Court Rule 141 provides in relevant part:

"(a) Motion for Summary Judgment; Requirements. A motion for summary judgment must be accompanied by a filing fee and a memorandum or brief that:
(1) *states concisely, in separately numbered paragraphs, the uncontroverted contentions of fact on which the movant relies*;
(2) for each fact, contains precise references to pages, lines and/or paragraphs or to a time frame if an electronic recording of the portion of the record on which the movant relies." (Emphasis added.) (2019 Kan. S. Ct. R. 211).

Thomas does not provide any legal authority for this claim of error, and as the Defendants point out, this procedural rule does not explicitly state that an uncontroverted statement may not be a compound sentence. Moreover, our court has held that a party complied with Supreme Court Rule 141(a)(1) when each factual contention of uncontroverted fact included more than one fact in each paragraph: "Plaintiffs contend that defendant's contentions of uncontroverted fact contained more than one fact in each separately numbered paragraph. Each factual contention within a paragraph did contain references to the record in the case. The trial court concluded the form of defendant's

5

motion sufficiently complied with Rule 141. We agree." *Finlay v. Finlay*, 18 Kan. App. 2d 479, 482, 856 P.2d 183 (1993).

We have reviewed the numerous objections as to form that Thomas raised. We discern no violations to Supreme Court Rule 141(a)(1). Moreover, we are persuaded that the separately numbered paragraphs containing compound sentences were adequately referenced and cited to the record in compliance with Rule 141(a)(2). Under a plain reading of the Supreme Court rule and *Finlay*'s precedent, we conclude that the district court did not err in adopting the Defendants' 28 uncontroverted contentions of fact in the procedural form presented by the Defendants.

*Whether Material Facts Are in Dispute*

Thomas persistently complains that the district court erred by adopting the Defendants' uncontroverted contentions of fact because, in his opinion, each of the 28 paragraphs are disputed, thus precluding summary judgment. Thomas argues:

> "This appeal turns on disputed material factual evidence that is contradicted by the oral testimony of a number of witnesses. There is allegedly no eyewitness who actually saw the shooting of Matthew Noll, there are only witnesses who claim to have observed various discrete time segments of what occurred. The eyewitness testimony however, is completely contradictory in nature, and raises issues of material facts and credibility issues with their testimony."

In response, the Defendants cite *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009), for the proposition that in order to preclude summary judgment the facts subject to the dispute must be material to the conclusive issues in the case. Although Thomas specifically and individually disputes that the facts contained within the 28 individual paragraphs are uncontroverted, the Defendants'

6

general response is that the disputed facts are not material to the conclusive issues raised in the summary judgment motion.

We have reviewed the 28 individual paragraphs that the district court ruled contained facts that were material and uncontroverted. We have considered Thomas' arguments that many if not all of these facts are disputed and, therefore, do not provide an appropriate factual basis for summary judgment. Upon our review, we find that the 28 paragraphs either contain uncontroverted contentions of material fact or—if disputed in whole or in part—the facts are not material to the district court's legal conclusions that, as a matter of law, Thomas failed prove the claims he made in his petition.

One paragraph illustrates the inadequacies of Thomas' objections. Paragraph 15 states:

"Next, Lynette, Kaylie, and Kayla all observed Amy Higgins go down to Matthew's truck, open and then immediately shut the passenger's side door, then come running back to the house yelling that Matthew had shot himself [asking for Lynette, Kaylie, and Kayla] to get John Porter, who was . . . at Ron [Younger's] house . . . and to call 911."

Thomas asserts this paragraph contains disputed facts because Lynette and Kaylie both testified that the reason Amy went to the truck "was to return the Apples to Apples game." Additionally, Kayla testified that "she had taken the Apples to Apples game out to Matthew Noll's truck at the time she took out his clothes." Moreover, Amy Higgins testified that "she did not know what happened to the Apples to Apples game." Finally, Thomas asserts there is an additional disputed fact because "Amy Higgins testified that after opening the passenger side door she shut the door and then went to the driver's side door and opened it."

7

It is an understatement to observe that inconsistent testimony about the Apples to Apples game was not only irrelevant but it did not controvert the materiality and importance of this paragraph, which was to establish that Amy discovered Matthew had shot himself while seated alone in the truck. Moreover, whether Amy opened another door upon making this heart-rending discovery does not controvert the material facts this paragraph proves.

Throughout this appellate issue, Thomas confuses the innumerable irrelevant and inconsistent facts inherent in discovery materials with genuine issues of disputed fact for purposes of summary judgment. An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014).

A second example illustrates another problem with Thomas' objections that the 28 paragraphs contain disputed facts. Paragraph 22 states:  "Plaintiff has produced no evidence that Kayla or Amy Higgins taunted and shamed Matthew in any way." Thomas asserts this is a disputed fact because "Thomas Noll testified he believed that Kayla Higgins and Amy Higgins were badgering Matthew Noll with the information Kayla Higgins obtained from his telephone to shame him."

What makes this objection invalid is that Thomas was not present at or about the time of Kayla's discovery of the photograph or the shooting. His belief, opinion, or speculation is without any factual or expert foundation and, therefore, is not evidence to controvert the substance of Paragraph 22. See Supreme Court Rule 141(d). Moreover, our review of the record reveals no evidence to support Thomas' conjecture that either Kayla

8

or Amy badgered Matthew or had any intent to shame him immediately prior to his death. Kansas law is clear:  Mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013).

Similar to the examples referenced above, Thomas has claimed disputed facts throughout the 28 paragraphs. We find these allegedly disputed facts are either irrelevant, immaterial, or they have no legal controlling force as to the controlling issues critical to the legal claims made by Thomas. As a result, Thomas' objections that fall under this category are without merit.

*Whether Material Facts Are Supported by Admissible Evidence*

A third category of objections made by Thomas is that the 28 paragraphs occasionally dealt with facts that were not supported by admissible evidence and, therefore, were not appropriate for purposes of summary judgment. In particular, Thomas objects that any facts proven by Matthew's statements are inadmissible hearsay because they could not be independently confirmed by Matthew. For example, Paragraph 6 states:

> "After asking Matthew to leave, they both walked to his truck. Kayla handed Matthew his phone without showing him the picture. Matthew sat his phone on the console then started getting straps out of the truck to tie down the Gator. Kayla did not touch anything in the truck. She told him she was going back to the house to get his stuff, and he responded, 'Okay.' Kayla then went back to the house."

Kayla testified this conversation with Matthew took place shortly after her discovery of the offending photograph and before the shooting. Given Matthew's death and the fact that no witnesses were present when the conversation occurred, Thomas argues the statements are "hearsay and therefore inadmissible, as there is no way to independently confirm these statements pursuant to K.S.A. 60-460."

9

Matthew's statement, "Okay," is not inadmissible as hearsay evidence. It was obviously not offered to prove the truth of any matter asserted. Rather, it appears to be admissible under the "[s]tatements of physical or mental condition of declarant" hearsay exception found in K.S.A. 2018 Supp. 60-460(l)(l). This exception provides that "a statement of the declarant's 'then existing statement of mind, emotion or physical sensation' is admissible 'when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant.'" *Crawford v. Estate of Moore*, No. 102,228, 2010 WL 2348695, at *9 (Kan. App. 2010) (unpublished opinion).

Given that Counts I and II of Thomas' lawsuit asserted that the Defendants caused Matthew to have emotional distress, the fact that Matthew simply said, "Okay," to Kayla's directive to take his personal items and leave the Higgins' property is some evidence that his existing state of mind or emotions was not agitated or angry, but rather calm. Thus, this one word statement by Matthew is admissible as an exception to K.S.A. 2018 Supp. 60-460(l)(l).

We have reviewed all of Thomas' objections to purported hearsay statements made by Matthew immediately prior to the shooting, and we conclude that these statements were either admissible as exceptions to the hearsay rule or were not disputed facts that could affect the genuine issues presented by the Defendants' summary judgment motion. See *Northern Natural Gas Co.*, 296 Kan. at 934.

*Whether the Defendants Controverted Thomas' Additional Facts*

In response to the Defendants' motion for summary judgment, Thomas not only controverted the 28 paragraphs of uncontroverted facts presented by the Defendants, he also responded by asserting 57 paragraphs of additional facts that he alleged established the disputed nature of material facts in this case. Thomas claims the Defendants did not admit or deny these facts and, therefore, the district court erred by not adopting them in

its determination of whether there were no disputed material facts to preclude summary judgment.

Inexplicably, the Defendants have not responded to this argument or pointed us to where they controverted or objected to Thomas' 57 paragraphs of additional facts. We are also not privy to any arguments presented in the district court or rulings made by that court that may have addressed Thomas' additional facts.

Supreme Court Rule 141 requires a party moving for summary judgment to lay out, in separate numbered paragraphs, the uncontroverted facts that support its motion for summary judgment. The party opposing summary judgment must state whether each of the movant's factual contentions are: (1) uncontroverted, (2) uncontroverted for purposes of the motion only, or (3) controverted. Supreme Court Rule 141(b)(1). "It is well settled that uncontroverted statements of fact in a party's motion for summary judgment are deemed admitted by a party who fails to controvert those facts." *Gietzen v. Feleciano*, 25 Kan. App. 2d 487, 488, 964 P.2d 699 (1998).

But Supreme Court Rule 141 does not prevent the party *opposing* summary judgment from also asserting uncontroverted facts in addition to those cited in its response to the movant's statement of uncontroverted facts. See *Velasquez v. Leidich*, No. 119,114, 2018 WL 6005241, at *3 (Kan. App. 2018). And when a movant fails to admit or deny the responding party's additional uncontroverted facts, they are considered admitted for the purposes of summary judgment. See *Carr v. Vannoster*, 48 Kan. App. 2d 19, 22, 281 P.3d 1136 (2012); *Dunn v. Dunn*, 47 Kan. App. 2d 619, 624, 281 P.3d 540 (2012).

On this record, it appears the Defendants failed to object to, admit, or deny the 57 additional uncontroverted facts posited by Thomas. As a result, these facts are considered admitted for summary judgment purposes. Still, although these facts are admitted, they

11

are not necessarily determinative of whether genuine issues of material fact still existed after considering both the Defendants' 28 paragraphs of facts and Thomas' 57 paragraphs of additional facts. In its journal entry, the district court did not indicate what effect, if any, the additional facts impacted its legal conclusion granting summary judgment to the Defendants.

On appeal, we apply the same rules relating to decision making in summary judgment matters that guide district courts. As noted earlier, "'"when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson*, 307 Kan. at 621.

We have reviewed the 57 paragraphs of additional facts submitted by Thomas. As a general observation, we find that almost all of these facts highlight inconsistencies in eyewitness testimony regarding peripheral or irrelevant matters that have no bearing on whether the claims made by Thomas are meritorious as a matter of law. Moreover, in his briefing, Thomas does not inform us how the additional facts controvert the Defendants' 28 paragraphs of facts the district court adopted in this case.

Our review, however, reveals Thomas argues that Defendants' Paragraph 25 was disputed, in part, by some of his submitted additional facts. Paragraph 25 states: "Plaintiff has produced no evidence that Kayla or Amy accidentally shot Matthew." In particular, Thomas asserts this is a disputed fact because "Thomas Noll testified that he believed that Kayla Higgins got mad at Matthew Noll, and *as the additional statement of facts show*, created a number of different stories, which are contradictory in nature as to what occurred that afternoon, which goes to the credibility of witnesses." (Emphasis added.)

There are three problems with this argument. First, as noted earlier, Thomas' opinion that because Kayla became mad at Thomas she necessarily accidentally shot and

12

killed him with a firearm is wholly speculative. Second, Thomas does not identify what additional facts he is arguing about in this paragraph, or how these additional facts show that Kayla or Amy accidentally shot Matthew. Appellants bear the burden to furnish a record on appeal sufficient to support the points raised on appeal. *Holmes v. State*, 292 Kan. 271, 280, 252 P.3d 573 (2011). Third, our review of the record persuades us that the district court was correct that there was no evidence that Kayla or Amy either intentionally or accidentally shot Matthew. In fact, substantial competent evidence proves that Matthew shot himself while seated alone in the truck.

Having independently considered the uncontroverted statements of fact presented by the Defendants and Thomas, we conclude the district court did not err in finding there were no disputed facts material to the conclusive issues in this case. Given this holding, we proceed to individually consider whether the district court erred in granting summary judgment to the Defendants on each individual claim asserted by Thomas in his amended petition.

COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Thomas contends that prior to the shooting, Kayla believed that Matthew was cheating on her. As a result, shortly before the shooting, Kayla activated Matthew's cell phone and discovered that he had sent the offending photograph to another girl. Kayla took a photograph of the offending photograph and told her mother about it, before confronting Matthew. According to Thomas, he "contends the photograph she took of Matthew Noll's penis was extreme and outrageous and that presenting said photograph to Matthew Noll was an intentional infliction of emotional distress."

The Defendants counter that summary judgment was appropriate on this claim because Thomas failed to produce any evidence to support three of the four elements of this particular cause of action.

13

The district court found summary judgment was appropriate:

> "The Court finds that Defendants are entitled to summary judgment on Count I.
>
> "The Court finds no conduct on the part of Defendants which could reasonably be considered as extreme or outrageous.
>
> "Furthermore, the Court finds no evidence of Defendants' intentional infliction of emotional distress so severe that no reasonable person should be expected to endure it."

To establish an intentional infliction of emotional distress cause of action, a plaintiff must prove four elements: First, the defendant acted intentionally, or in reckless disregard of the plaintiff. Second, the defendant's conduct was extreme and outrageous. Third, the defendant's conduct caused the plaintiff's mental distress. Finally, plaintiff's mental distress was extreme and severe. PIK Civ. 4th 127.70. We will focus our analysis on the second element—whether the Defendants' conduct was extreme and outrageous.

Under Kansas law:

> "Conduct that rises to the level of tortious outrage must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind. The law will not intervene where someone's feelings merely are hurt. In order to provide a sufficient basis for an action to recover for emotional distress, conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Valadez v. Emmis Communications*, 290 Kan. 472, 477, 229 P.3d 389 (2010).

The uncontroverted evidence shows that Matthew and Kayla shared the passcodes to their cell phones with one another and used each other's phones from the beginning of their relationship. Thus, Kayla's conduct of viewing data on Matthew's cell phone was typical and unremarkable behavior. Similarly, Kayla's confronting Matthew about the offending photograph and asking him to leave the property seems like a rather ordinary response from a girlfriend who has just learned that her boyfriend has engaged in an

14

improper and unfaithful act. Under the circumstances, Kayla's behavior hardly constitutes conduct that "goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Valadez*, 290 Kan. at 477. Finally, there is no evidence that Amy had anything to do with Kayla's behavior in reacting to discovery of the offending photograph.

The nonmoving party in response to a summary judgment motion is required to establish each element of its cause of action. *Dozier v. Dozier*, 252 Kan. 1035, 1041, 850 P.2d 789 (1993). If the nonmoving party does not sufficiently establish every essential element of its case on which it has the burden of proof, the moving party is entitled to summary judgment. 252 Kan. at 1041. With regard to the claim of intentional infliction of emotional distress, Thomas has failed to make any showing that the Defendants' conduct was extreme and outrageous.

## COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

On appeal, Thomas incorporates his responses to the intentional tort claim "so as not to duplicate the arguments" which apply to this claim which Thomas ambiguously refers to simply as "negligence." For their part, the Defendants' reprise the arguments they made in response to Count I. All things considered, we understand Thomas to argue that, similar to Count I which dealt with intentional conduct, in Count II he sought damages for the *negligent* infliction of emotional distress.

On this count, the district court ruled:

> "The Court finds that there is no evidence of conduct outrageous to the point that it goes beyond the bounds of decency and is intolerable in a civilized society. There further is no evidence that Defendants had any knowledge of a high risk of harm to the decedent or that he would act in the manner he did."

15

Because the district court based its summary judgment ruling, in part, on the fact that Thomas failed to show evidence that the Defendants' conduct was outrageous to the point that it goes beyond the bounds of decency and is intolerable in a civilized society, we affirm the district court on that basis. Similar to the second element of the intentional claim in Count I, we conclude that Thomas has failed to make any showing in his negligence claim in Count II that the Defendants' conduct in confronting Matthew with the offending photograph was extreme and outrageous.

### COUNT III: WRONGFUL DEATH

With regard to this claim, Thomas contends Matthew had a legal expectation of privacy to his cell phone and "the Defendants have failed to offer any admissible proof that Matthew Noll had given them permission to look through his text messages." As a result, "there clearly was a legal duty which existed, and which Thomas Noll asserted the Defendants breached." According to Thomas, this breach of privacy resulted in Kayla confronting Matthew which proximately caused Matthew to commit suicide.

The Defendants contest that they had any duty to Thomas under these circumstances. They also point out that Thomas testified he did not believe Matthew committed suicide. Thus, they argue, there is no substantial, competent evidence to support Thomas' claim. According to the Defendants, Thomas simply asserts his personal opinion that Amy and Kayla were at fault in causing Matthew's suicide but this opinion is rank speculation that is insufficient proof of proximate causation.

In granting summary judgment on this count, the district court ruled:

"There is no substantial, competent evidence in the record to establish a claim of negligence.
"Negligence is not presumed, and it cannot be established by conjecture, surmise, or speculation. Plaintiff's claims arise from conjecture, surmise, and speculation.

16

"Again, there is no evidence of conduct that could reasonably be regarded as so extreme and outrageous as to permit recovery and no showing of a duty. Negligence has not been established by substantial competent evidence."

A prima facie case for negligence in a wrongful death action requires the plaintiff to establish that the defendant owed the plaintiff a duty, and a breach of that duty proximately caused the death. See *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

Similar to the prior analysis, Thomas does not establish a legal duty that the Defendants owed to Matthew. Thomas attempts to establish a privacy right owed to Matthew in the contents of his cell phone, but he does not cite any civil cases establishing the contours of this right. Moreover, the uncontroverted testimony by Kayla was that she and Matthew shared the passwords to their phones and they used each other's phones interchangeably. As a result, any privacy right that Matthew may have had under Kansas law was obviously waived with respect to Kayla. Finally, as discussed with regard to the prior two claims, there was no showing that Kayla's conduct in confronting Matthew with the offensive photograph and asking him to leave the property was actionable as an intentional or negligent tort. We find the district court did not err in granting summary judgment to the Defendants as to Count III.

COUNT IV: CONVERSION

In Count IV of Thomas' amended petition he asserts a claim which he designated as "Additional Damages." In particular, Thomas asserts that he owns a "brome seeder valued at $1,800.00 that Defendants retained after the death of Matthew Noll. Defendants never returned to Plaintiff the brome seeder." Thomas asked the district court "for return of the brome seeder or an award of $1,800.00 as damages for the value of the seeder."

17

By all appearances, in this count, Thomas has brought a cause of action for conversion. See *Nelson v. Hy-Grade Construction & Materials, Inc.*, 215 Kan. 631, Syl. ¶ 2, 527 P.2d 1059 (1974) ("A conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another."); PIK Civ. 4th 124.79.

On appeal, Thomas presents a three sentence argument. Thomas acknowledges that during this litigation Amy returned the brome seeder to Thomas, but he asserts the district court erred in concluding that, as a result, the issue is moot. According to Thomas, the return of the equipment "would only go to mitigation of damages."

Conversely, the Defendants argue that the return of the brome seeder satisfied this claim under the principle of accord and satisfaction. Additionally, they emphasize that in his amended petition Thomas only requested return of the brome seeder and did not request additional damages.

On this count, the district court simply ruled: "The brome seeder was returned May 12, [2017]. By accord and satisfaction the issue is now moot."

Upon our review, in this claim Thomas sought either the return of the brome seeder or $1,800. It is undisputed that the brome seeder was returned to Thomas. Accordingly, we find no error in the district court's legal determination that this is a moot issue. See *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014) (Mootness is when "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.'").

COUNTS V AND VI: WRONGFUL DEATH IN THE ALTERNATIVE

With regard to these two counts, Thomas alternatively contends that either Kayla or Amy accidentally shot and killed Matthew. Defendants counter that there is no proof that either of the Defendants shot and killed Matthew. To the contrary, substantial competent evidence showed that Matthew shot himself while seated alone inside his truck.

The district court ruled: "There is no substantial, competent evidence to establish Plaintiff's claim that Defendant[s] Kayla Higgins or Amy Higgins accidentally shot Matthew Noll. The entire claim in based upon conjecture, surmise, and speculation."

We agree. As found by the district court, numerous eyewitnesses saw Matthew enter the truck, alone, and start the engine. Because the windows were darkly tinted, the eyewitnesses could not see inside. According to the district court: "The truck sat idling for several minutes and then the engine revved and Kaylie saw some sort of smoke or something leave the driver's side window." Three of the eyewitnesses saw Amy go over to Matthew's truck, open the passenger's side door, and come running back to the house yelling that Matthew had shot himself. The district court also found from the undisputed evidence that "[t]he Jefferson County Sheriff and Coroner investigated the scene and determined the shooting to be self-inflicted and Matthew's cause of death to be suicide."

Although there is no evidence that Kayla or Amy intentionally or accidentally shot Matthew, Thomas predicates this claim on certain inconsistencies in the eyewitness accounts. As discussed earlier, however, evidentiary inconsistencies on matters that are not relevant or material to the claims proffered by Thomas are of no significance for purposes of summary judgment. Most importantly, Thomas has not provided any evidence of any version of events where either Amy or Kayla intentionally or accidently shot and killed Matthew.

19

In summary, the district court did not err in granting summary judgment in favor of the Defendants. Resolving all facts and inferences which may reasonably be drawn from the evidence in favor of Thomas, we find there are no genuine issues as to any material facts and the Defendants are entitled to judgment as a matter of law.

Affirmed.