NOT DESIGNATED FOR PUBLICATION

No. 122,000

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

PHYLLIS J. PEASE,
*Appellee*,

and

BENJAMIN C. PEASE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed April 30, 2021. Affirmed.

*Robert S. Jones*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, for appellant.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, and *Sandy Norris*, of Lawson Norris Sorensen, LLC, of Kansas City, Missouri, for appellee.

Before BUSER, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: The Riley County District Court entered a divorce decree in late July 2018 ending the marriage between Phyllis J. and Benjamin C. Pease. The decree incorporated a lengthy property settlement agreement the two approved earlier that month. Benjamin later challenged how income tax refunds for 2017 should be apportioned under the agreement. The district court found the agreement unambiguously divided the refunds equally between Phyllis and Benjamin. Benjamin has appealed. We agree with the district court and affirm. We also consider and grant Phyllis' motion for attorney fees for the appeal.

1

The terms of the divorce indicate Benjamin had been the primary wage earner in the marriage. At least in recent years, the couple paid estimated income taxes on a quarterly basis. Phyllis filed a petition for divorce in May 2017 to end the 30-year marriage. In January 2018, Benjamin personally made a final quarterly payment of estimated income taxes for 2017 and later made an additional payment when they requested an extension to file their 2017 income tax returns. Those payments totaled either $80,000 or $90,000. Benjamin has cited each figure at different times in the proceedings, but the precise amount does not bear on the controlling legal issue. Phyllis and Benjamin received a refund of $107,564 on their 2017 federal income taxes and a refund of $19,822 on their state income taxes for a total of $127,386.

The 17-page property settlement agreement addressed the 2017 income taxes this way:

> "H.     2017 Tax Return:  Petitioner and Respondent agree to file a joint federal and state income tax return for the tax year 2017. Each party agrees to cooperate in providing any and all records needed in order to properly complete and file such return as required by law. The taxes due in connection with the filing of such return shall be paid one-half (1/2) by Petitioner and one-half (1/2) by Respondent, subject to the utilization of the funds contained in the Emigrant Direct account (see § I.I.) in the approximate amount of $1,400.00.
>
> "The Petitioner's obligation to pay on the 2017 tax return (federal and state) shall be limited to no more than $25,000.00, after the application of the Emigrant Direct account proceeds. Any amount due in excess of that sum ($25,000.00) shall be paid by the Respondent. Any refund that may be due shall be divided one-half (1/2) to the Petitioner and one-half (1/2) to the Respondent."

After the refunds were received, Benjamin filed a motion with the district court arguing that under the settlement agreement half of both the last quarterly payment and the

extension payment he made should be offset against the portion of the income tax refund due Phyllis. Phyllis opposed the motion.

After hearing the arguments of the lawyers and reviewing various documents, the district court issued a brief journal entry finding the property settlement agreement plainly called for the 2017 income tax refunds to be divided equally between Phyllis and Benjamin and ordering them distributed accordingly. The district court denied Benjamin's motion for reconsideration. Benjamin has appealed.

A property settlement agreement incorporated into a divorce decree functions both as a contract between the divorcing parties and an order of the district court. See *Dozier v. Dozier*, 252 Kan. 1035, 1039, 850 P.2d 789 (1993); *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 939-40, 381 P.3d 490 (2016). We, therefore, apply the rules of contract interpretation to the Peases' property settlement agreement. As a general matter, a contract should be construed to give effect to the intent of the parties consistent with the plain meaning of the language used and considering the whole of the agreement. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1206, 308 P.3d 1238 (2013) (whole agreement); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009) (plain language). If the operative language is unambiguous, those words necessarily govern the rights and obligations of the contracting parties.

A contract is unambiguous "if the language . . . is clear and can be carried out as written." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 2, 829 P.2d 884 (1992). Conversely, an ambiguous contract "must contain provisions or language of doubtful or conflicting meaning." 250 Kan. 676, Syl. ¶ 2. Typically, the words used in a contract should be given their common or customary meaning. *Pfeifer v. Federal Express Corporation*, 297 Kan. 547, 550, 304 P.3d 1226 (2013); *Gold Mine Investments v. Mount Vernon Fire Ins. Co.*, 48 Kan. App. 2d 818, 824, 300 P.3d 1113 (2013). Ambiguity then

arises only if "the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992); *Kincaid v. Dess*, 48 Kan. App. 2d 640, 647, 298 P.3d 358 (2013) ("A contract is ambiguous when the words . . . may be understood in two or more ways."). Whether a contract is ambiguous presents a question of law, as does the interpretation of an unambiguous contract. See *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011); *Levin v. Maw Oil & Gas*, 290 Kan. 928, Syl. ¶ 2, 234 P.3d 805 (2010) ("The interpretation and legal effect of a written instrument are matters of law.").

With those principles in mind, we turn to the language of the property settlement agreement. We need not belabor the point or unduly extend our analysis. In the section devoted to the 2017 income taxes, the agreement states: "Any refund that may be due shall be divided one-half (1/2) to [Phyllis] and one half (1/2) to [Benjamin]." It is hard to come up with a clearer enunciation of a particular intent and result. Phyllis and Benjamin agreed to divide equally any refund from their 2017 income taxes. At the time they drafted and approved the agreement, they did not know whether there would be refunds. But uncertainty about a future event does not inject ambiguity into what contracting parties have clearly agreed to do should the event occur.

The agreement also covers how any taxes that might have been due when the returns were filed would be paid. Phyllis and Benjamin would divide the tax liability equally with a cap of $25,000 on Phyllis' obligation. Those provisions refer to "taxes due . . . with the filing of such return" and the "obligation to pay on the 2017 tax return[s]." The language covers any taxes owed as shown in the tax returns—an amount determined after crediting the estimated taxes already paid and any other prepayments. Again, when Phyllis and Benjamin signed the property settlement agreement, they did not know if they would owe taxes. Those provisions would have disposed of that contingency had it arisen.

4

So the agreement includes complementary terms addressing how refunds would be divided (if there were any) and how final tax liabilities would be paid (if there were any). The agreement, thus, covers whatever financial impact the yet-to-be filed 2017 income tax returns would have on Phyllis and Benjamin.

The agreement does not include some adjustment or credit to Benjamin for the fourth-quarter estimated taxes he paid or the payment he included with the extensions to file the 2017 income tax returns. But the omission does not create an ambiguity. Rather, it is properly construed to indicate the parties reached no agreement affording Benjamin a credit for those payments as part of the overall reconciliation of the financial assets and liabilities associated with the marriage. In arriving at that reconciliation, Phyllis and Benjamin obviously took account of the 2017 taxes. This is not a situation in which the parties to a property settlement agreement apparently overlooked a particular asset or liability. Moreover, Benjamin knew he had made those tax payments when he and Phyllis negotiated and agreed to the property settlement in mid-2018. If he had wanted some credit for them, he should not have signed off on an agreement that did not incorporate such an accommodation.

In short, the district court got it right.

After this case had been set on our November 2019 docket, Phyllis timely filed a motion to recover her attorney fees for the appeal. Under Supreme Court Rule 7.07(b) (2020 Kan. S. Ct. R. 50), on which Phyllis relies, we may award attorney fees on appeal if the district court had the authority to award fees. Phyllis cites a provision in the property settlement agreement that requires her and Benjamin to "indemnify" each other for "any sums which either is required to pay, including court costs and attorney fees, as a result of the failure of the other to pay the indebtedness to be paid according to the terms and conditions of this Agreement." Benjamin has filed nothing in response to Phyllis' motion.

5

In the absence of a response, we presume the provision in the agreement entails attorney fees Phyllis incurred to protect her contractual right to half the 2017 income tax refunds. Her share is arguably an indebtedness Benjamin owed, and he declined to pay the full amount when he sought a reduction for the prepaid taxes. We have no basis to conclude the parties intended something else, although the indemnification language doesn't exemplify what might be considered plain English.

Phyllis retained a Kansas City lawyer who specialized in appellate practice to handle the appeal. The lawyer has submitted a detailed affidavit, time records, and other materials in support of the attorney fee request. The lawyer has a standard hourly rate of $400 and spent 22.5 hours on the appeal, yielding a fee request of $9,000. Without any objection from Benjamin to the amount or the supporting information, we have reviewed the fee request for general reasonableness consistent with the factors in Rule 1.5(a) of the Kansas Rules of Professional Conduct (2020 Kan. S. Ct. R. 297); see *Consolver v. Hotze*, 306 Kan. 561, Syl. ¶ 2, 395 P.3d 405 (2017). We find the request to be reasonable and, therefore, grant Phyllis' motion for attorney fees on appeal in the amount of $9,000.

The district court is affirmed, and Phyllis Pease's motion for $9,000 in attorney fees is granted.